ATTORNEYS FOR APPELLANT
Donald C. Swanson, Jr.
Andrew L. Teel
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 02S05-1404-CR-246

JONATHAN D. CARPENTER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Allen Superior Court, No. 02D04-1207-FD-1008
The Honorable Wendy W. Davis, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A05-1304-CR-207

**October 21, 2014**
**Corrected**

**Massa, Justice.**

Jonathan Carpenter appeals the admission of evidence recovered from his home after officers entered it without a warrant in pursuit of an aggressive and bloody dog. We are asked to decide whether that entry was reasonable. Because we find it was not, we hold that the search violated Article 1, Section 11 of our Indiana Constitution and thus we reverse the trial court.

**Facts and Procedural History**

On a summer afternoon, police responded to a report of dogs fighting in Carpenter's backyard. Officer Matthew Wilson of the Fort Wayne Police Department was the first to arrive on the scene. Neighbors told him that Carpenter was not home and gave him Carpenter's cell phone number. From outside the fenced yard, Officer Wilson observed three bloody pit bulls running to and from an area underneath a deck where a wounded fourth dog had retreated. Officer Tina Blackburn arrived next, followed by Sergeant Derrick Westfield. They also saw the dogs running in and out of the home through an open sliding glass door.

When Fort Wayne Animal Care and Control Officer Bryan Miller arrived, he decided to enter the yard to corral the dogs despite Sergeant Westfield's reservations. As the gate was locked, Miller jumped over the three-foot fence to remove the dogs from the yard and secure them in his vehicle. Miller caught three of the dogs, including the most severely injured one hiding under the deck, but the fourth dog went into the house and would not come out. At that point, Miller asked Sergeant Westfield to enter the house with him to retrieve the fourth dog and ensure no one was injured.

The officers knocked on the front door, but no one answered. Sergeant Westfield then announced their presence at the open sliding door in the back and asked if anyone was inside, but no one responded. They entered the home, and once inside, Miller and Sergeant Westfield noticed two doors with ventilation ducts protruding out of them and a strong light emanating from behind them. Sergeant Westfield opened the door to one of the rooms and found marijuana plants inside. Miller eventually located the fourth dog in an upstairs bedroom and removed it. They did not find any other dogs or people in the home.

Based on the officers' observations, members of the Vice and Narcotics Unit obtained and executed a search warrant for Carpenter's home, seizing the marijuana and other controlled substances. During the search, neighbors advised the officers that Carpenter worked at the gas station just down the street. Carpenter returned home, and the officers arrested him.

2

The State charged Carpenter with five Class D felonies: maintaining a common nuisance, possession of more than thirty grams of marijuana, and three counts of possession of a controlled substance.[1] It also charged him with one Class A misdemeanor: possession of paraphernalia. Carpenter moved to suppress the evidence found in his home, arguing the search violated his rights under both the Fourth Amendment to the Federal Constitution and Article 1, Section 11 of our Indiana Constitution. After a hearing, the trial court denied Carpenter's motion. During his bench trial, Carpenter objected to the admission of the evidence, but the trial court overruled that objection and admitted it. The court found Carpenter guilty of all charges.

Carpenter appealed his conviction, arguing the trial court abused its discretion by admitting the challenged evidence and without it, his conviction lacked sufficient evidentiary support. The Court of Appeals disagreed and affirmed the trial court, concluding exigent circumstances justified the officers' warrantless entry into Carpenter's home. Carpenter v. State, 3 N.E.3d 1068, 1071–73 (Ind. Ct. App. 2014).

We granted transfer, thereby vacating the opinion below. Carpenter v. State, 6 N.E.3d 950 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

Although Carpenter frames his appeal as a challenge to the trial court's denial of his pretrial suppression motion, he did not seek interlocutory review of that decision. Thus, we consider his appeal as what it is: a request to review the court's decision to admit the evidence at trial. Guilmette v. State, 14 N.E.3d 38, 40 (Ind. 2014) (citing Clark v. State, 994 N.E.2d 252, 259 (Ind.

---

[1] Before trial, the State moved to dismiss one of the counts of possession of a controlled substance, Count V, and the trial court granted that motion.

3

2013) ("Direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal.")).

In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. Id. at 40 n.1. It also considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. Id. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is "clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." Clark, 994 N.E.2d at 260. But the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. McIlquham v. State, 10 N.E.3d 506, 511 (Ind. 2014).

**The Trial Court Erred by Admitting the Evidence Recovered from Carpenter's Home.**

Carpenter argues the officers' entry into his home was unreasonable and therefore violated his rights under Article 1, Section 11 of our Indiana Constitution. He contends the warrant to search his home was based upon illegally obtained information, and the trial court should have excluded the evidence obtained in that search. We agree.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Ind. Const. art. 1, § 11. Although Indiana's Section 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct. Austin v. State, 997 N.E.2d 1027, 1034 (Ind. 2013). The Fourth Amendment analysis turns on whether the subject has a "reasonable expectation of privacy," Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring), while the Section 11 analysis turns on whether the police conduct was reasonable under the totality of the

4

circumstances. State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002). The State bears the burden to show the intrusion was reasonable. Id. When we evaluate the reasonableness of the officers' actions, we consider: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

Here, the State concedes the officers' entry was not based upon any concern, suspicion, or knowledge that anything illegal was going on inside the home. State's Br. at 12 ("To be sure, when the officers entered the curtilage and the house, they were not concerned about any 'violation.'"). Instead, they entered to secure the dog and determine if any person needed help. Id. at 13 ("The police needed to determine the source of the blood on the animals and, more importantly, to determine if there were humans inside the house in need of medical assistance."). The first factor thus weighs against the legality of the search.

Next, we turn to the degree of intrusion, which we consider from Carpenter's point of view. See Duran v. State, 930 N.E.2d 10, 19 (Ind. 2010) ("The degree of intrusion is viewed from the point of view of the occupants or owners of the premises searched."). "Houses and premises of citizens receive the highest protection." Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994). For this reason, warrantless searches of a home are presumptively unreasonable. State v. Straub, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001). Under this standard, the officers' entry into Carpenter's house was highly intrusive. The State argues the intrusion was mitigated because Carpenter's sliding door was open. On these facts, however, the open door is not enough to overcome the high degree of intrusion; the door may have been open so the dogs could travel in and out of the house on a hot day, and the fence and padlocked gate served to secure the property against all other entrants.

Finally, we balance the needs of law enforcement. Police sometimes act not to further an investigation of wrongdoing but rather to prevent imminent harm or to provide emergency assistance. We have said before that protection of the public is a legitimate and important law

5

enforcement function. Holder v. State, 847 N.E.2d 930, 941 (Ind. 2006). "It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns." Id. at 940. Section 11 thus allows warrantless entry into a home when an officer has objectively reasonable grounds to believe immediate aid is needed inside. VanWinkle v. State, 764 N.E.2d 258, 266–67 (Ind. Ct. App. 2002), trans. denied, 774 N.E.2d 516 (Ind. 2002). We previously have found such objectively reasonable grounds when police know a person is in a dangerous location. In Holder, the defendant appealed the denial of his motion to suppress evidence of methamphetamine production. Holder, 847 N.E.2d at 933. Officers had knocked on Holder's door because they smelled ether, a chemical used to make methamphetamine, escaping from his home. Id. at 934. Holder opened the door, "resulting in a rush of ether fumes," and told the officers his infant granddaughter and two other people were inside. Id. at 934, 939. Knowing ether to be highly flammable and explosive, the officers determined there was a "risk of immediate danger to a young child in the volatile atmosphere of the home" and decided to enter. Id. at 939. We found that entry to be reasonable because the evidence of the illegal drug and the need to protect the people inside outweighed the nature of the intrusion into the home. Id. at 941; see also VanWinkle, 764 N.E.2d at 266 (finding, where an officer knew of explosive chemicals in an occupied home, he reasonably concluded there was an immediate need to enter).

Nevertheless, although the police unquestionably have an interest in protecting the public from risk of harm from a violent dog, this interest does not confer blanket authority to enter private homes under all circumstances. Unlike Holder and VanWinkle, in which the officers knew there were people in dangerous situations, the officers in this case had no such knowledge. In fact, the objective evidence suggested there was no one home; no one answered the door or responded to the officers' announcements, and a neighbor told the officers the homeowner was at work. Any threat of danger to the outside public was slight; the dog was confined in a fenced yard secured by a locked gate, and the officers could have further prevented the dog's escape by closing the sliding door. The dogs' aggressive behavior and bloodied appearance simply were not enough to give rise to a reasonable belief that a person was in danger of imminent harm or in need of immediate assistance. Moreover, the officers did not *need* to enter to address the situation. They had

6

Carpenter's phone number, and calling him or his employer to ensure that no one was in the residence would not have been overly burdensome. See Trotter v. State, 933 N.E.2d 572, 581 (Ind. Ct. App. 2010) (finding law enforcement needs to be low, especially where "the officers made no effort to contact [the defendant] by any means other than direct intrusion into the dwelling").

Taken together, these factors lead us to conclude the officers' entry into Carpenter's home was unreasonable and therefore impermissible under Section 11. Because the warrant was based on the officers' observations made during their illegal presence inside Carpenter's home, the admission of evidence recovered pursuant to that warrant was an abuse of discretion. And the State offered no other evidence against Carpenter. Accordingly, we must reverse his convictions.

Our opinion today does not mean that an animal's condition or behavior could never give rise to reasonable grounds upon which a police officer could enter a residence without a warrant. All we hold is that on these facts, the trial court erred in concluding entry was reasonable without any objective evidence that a person required immediate assistance. Because we have resolved this issue under our Indiana Constitution, we need not consider Carpenter's claim that the admission of the evidence found in his home violated his rights under the Fourth Amendment to the Federal Constitution.

**Conclusion**

For the reasons set forth in this opinion, we reverse the trial court.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.