## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 30 2016, 6:13 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Russell E. Shreve,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2016

Court of Appeals Case No.
20A03-1505-CR-342

Appeal from the Elkhart Superior Court

The Honorable David C. Bonfiglio, Judge

Trial Court Cause No.
20D06-1303-FD-288

**Altice, Judge.**

**Case Summary**

[1] Russell Shreve appeals his conviction for Class D felony possession of methamphetamine and Class A misdemeanor possession of paraphernalia. Shreve's sole claim on appeal is that the trial court erred in admitting evidence found during a search of his vehicle following a traffic stop. Specifically, he claims the search was unconstitutional under Article 1, Section 11 of the Indiana Constitution.

[2] We affirm.

## Facts & Procedural History

[3] Around 6:30 p.m. on March 16, 2013, Officer Robert Smith of the Elkhart County Sheriff's Department was patrolling northbound on U.S. Route 33 when he noticed a truck being followed by a passenger car. Both vehicles were traveling five to ten miles under the posted speed limit in the passing lane of the busy highway. While following the vehicles at a distance for a mile or two, Officer Smith ran license plate checks. Both vehicles came back as being owned by Shreve, who was later found to be the driver of the truck.

[4] The vehicles eventually made a left turn into a gas station, and Officer Smith proceeded northbound a bit before pulling over to wait, as he believed they were trying to evade him. Minutes later, the two vehicles proceeded northbound on the highway again with the truck driven by Shreve in the lead. As they passed Officer Smith, he began following them again. The vehicles continued traveling slowly in the passing lane with several other vehicles lined

up behind them.  Officer Smith eventually stopped the truck driven by Shreve for impeding the flow of traffic.

[5]  As Officer Smith obtained Shreve's license, registration, and proof of insurance, he smelled an odd chemical odor coming from inside the truck, which he could not identify.  He also observed that Shreve seemed very nervous, had shaky hands, and was sweating profusely despite the cold temperature outside.  Additionally, Shreve's responses to questions seemed abnormally quick to Officer Smith.  As a result of Shreve's nervous behavior and the chemical odor, Officer Smith returned to his police vehicle with Shreve's documents and radioed for assistance.

[6]  Lieutenant Casey Lehman arrived fourteen minutes after the traffic stop was initiated.  He spoke with Officer Smith and then approached Shreve.  Lieutenant Lehman noticed the "odd chemical odor coming from the vehicle that [he] did not recognize." *Transcript* at 106.  He also observed that Shreve appeared nervous and had sweat on his forehead.  Based on his observations, Lieutenant Lehman asked Shreve to exit and go to Officer Smith, who was standing at the back of the truck.  Lieutenant Lehman briefly turned his attention to the passenger, Shreve's girlfriend, Katherine Crabtree, but then Shreve fell to the ground shaking.  The officers called an ambulance and assisted Shreve to the curb, where he sat, and Crabtree eventually joined him.  Shreve's condition quickly improved, and the officers inquired as to whether he had a medical condition or whether there was anything in the truck that might have caused the fall.  Shreve responded in the negative, and Crabtree indicated

that he had not eaten in a while. Shreve asked that the officers cancel the ambulance, and they did. Lieutenant Lehman then asked if he could search the truck to see if there was anything inside that might have caused his condition. Shreve responded, "Go ahead." *Id*. at 108. Shreve's consent to search was given within three minutes of Lieutenant Lehman's arrival on the scene.

[7] Lieutenant Lehman searched the driver's side of the truck and found an eyeglass case on the front seat near where the driver's leg would rest. He opened the case and found a glass pipe with residue and burn marks on it. Based on his training and experience, Lieutenant Lehman recognized this to be a pipe used to ingest methamphetamine. He showed the pipe to Officer Smith and then read Shreve his Miranda warnings and began to administer field sobriety tests.

[8] In the meantime, Smith retrieved his police K-9 from his vehicle on the scene. The K-9 did not alert to the exterior of the vehicle, but it did alert to an area between the center console and the driver's seat. At that point, Officer Smith did a hand search of that area and found a small fuse box. He then opened the container and found a substance later determined to be .097 grams of methamphetamine, along with another item of drug paraphernalia.

[9] Shreve was arrested for possession of paraphernalia and methamphetamine, as well as cited for impeding traffic. The State charged him, on March 19, 2013, with possession of methamphetamine as a Class D felony and possession of paraphernalia as a Class A misdemeanor.

[10]   On September 4, 2013, Shreve filed a motion to suppress all evidence seized from his truck. Following a suppression hearing, the trial court denied Shreve's motion on August 19, 2014. Shreve's subsequent petition for certification for interlocutory appeal of this order was denied by the trial court, and the case proceeded to a jury trial on December 15, 2014. The jury found Shreve guilty of both counts. On April 22, 2015, the trial court sentenced him to an aggregate term of 540 days with 360 days suspended to probation. Shreve now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[11]   Shreve challenges the admission of evidence relying solely on Article 1, Section 11 of the Indiana Constitution. He argues that Officer Smith unconstitutionally prolonged the detention and radioed for a second officer based on the smell of a "legal, unidentified odor" coming from the interior of Shreve's vehicle. *Appellant's Brief* at 8. In sum, Shreve argues that "police should not be able to continue the detention of the motorist simply because they smell a legal odor, which they do not recognize." *Id.* at 20.

[12]   In reviewing a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence. *Meredith v. State,* 906 N.E.2d 867, 869 (Ind. 2009). Rather, we consider conflicting evidence in a light most favorable to the trial court's ruling and defer to the trial court's factual determinations unless clearly erroneous. *Id.* We "consider afresh any legal question of the constitutionality of a search or seizure." *Id. See also*

*Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) ("the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo").

[13] It is well established that although Indiana's Article 1, Section 11 and the federal Fourth Amendment are textually identical, they are analytically distinct. *Carpenter*, 18 N.E.3d at 1001. Under the Indiana Constitution, our analysis "turns on whether the police conduct was reasonable under the totality of the circumstances." *Id*. at 1002. The State bears the burden of showing that the intrusion was reasonable. *Id*. When evaluating the reasonableness of a search or seizure, we consider the following non-exclusive factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs."[1] *Id*. (quoting *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind. 2005)). *See also Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005) (addressing the "independent interpretation and application" of Indiana's search and seizure clause).

[14] Shreve does not challenge the legality of the initial stop for impeding the flow of traffic, nor could he. *See Datzek v. State*, 838 N.E.2d 1149, 1154 ("a police

---

[1] Although acknowledging that Indiana's constitutional provision is analytically distinct from the Fourth Amendment, Shreve does not set out or apply the factors relevant to determining the reasonableness of a search or seizure under our state constitution. Similarly perplexing, he discusses several Fourth Amendment cases, like *Clark v. State*, 994 N.E.2d 252 (Ind. 2013) and *Hawkins v. State*, 626 N.E.2d 436 (Ind. 1993), while expressly indicating that his constitutional claim is being raised only under our state constitution.

officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation"), *trans. denied*. *See also* Ind. Code § 34-28-5-3(a) (officer may detain the person for a sufficient time to inform them of the allegation, obtain identifying information from the person, and allow the person to execute a notice to appear). His claim is that Officer Smith unreasonably lengthened the stop so that another officer could come to the scene and attempt to identify the odor coming from inside Shreve's truck.

[15] In considering the reasonableness of police conduct in this case, we turn first to Officer Smith's degree of concern, suspicion, or knowledge that the vehicle contained contraband. The State presented evidence that after driving somewhat evasively in tandem with another vehicle, Shreve was very nervous, shaky, and sweating profusely – despite cold outside temperatures – when stopped. He also answered questions abnormally fast when speaking with Officer Smith. On top of Shreve's nervous behavior[2] and suspicious driving pattern, Officer Smith smelled a chemical-based odor coming from inside the truck that he could not identify.[3] Based on his reasonable concern and suspicion under the circumstances, Officer Smith requested the assistance of

---

[2] While nervousness may indicate potential wrongdoing, our Supreme Court has recognized that it is not unusual for a citizen to become nervous when confronted by police. *State v. Quirk*, 842 N.E.2d 334, 341 (Ind. 2006). Accordingly, "other evidence that a person may be engaged in criminal activity must accompany nervousness before the nervousness will evoke suspicion necessary to support detention." *Id*.

[3] Officer Smith testified that methamphetamine has a "chemical like odor" that varies in smell depending on the chemicals used and the amount of chemical used. *Transcript* at 60. He explained, the drug can have "a different odor each time." *Id*.

another officer, and Lieutenant Lehman arrived fourteen minutes after the stop began. Upon his arrival, Lieutenant Lehman also observed Shreve's nervousness and the chemical odor. Accordingly, he asked Shreve to step out of the truck to speak with Officer Smith. The officers' concern was then amplified when Shreve seized up and fell to the ground while making his way to the back of his truck.

[16] Next, we turn to the degree of the intrusion, which we consider from Shreve's point of view. *See Carpenter*, 18 N.E.3d at 1002. Shreve was validly stopped for a traffic infraction, and the stop was extended briefly – less than fourteen minutes – to allow time for another officer to arrive on the scene. Shreve remained seated in his vehicle with his girlfriend, Crabtree, during this time. Lieutenant Lehman's subsequent request that Shreve exit his vehicle to speak with Officer Smith was a minimal intrusion on his ordinary activities. He was not handcuffed or otherwise placed in custody. Further, after Shreve's unexpected fall, the officers came to his aid, allowed Crabtree to sit with him on the curb, and inquired as to the cause of his condition. Shreve recovered quickly and indicated that he did not want an ambulance. Lieutenant Lehman then asked for permission to search the truck for anything that might have caused Shreve's condition, and Shreve granted permission to search.[4] The degree of intrusion leading up to Shreve's consent was low.

---

[4] Contrary to Shreve's assertions on appeal, there is no indication in the record that the officers used duress or coercion to obtain his consent. Shreve also cites *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975), to argue that he

Finally, we balance the needs of law enforcement. Officer Smith's conduct in making the stop was appropriate to the enforcement of traffic laws. After the lawful stop, additional circumstances presented that raised Officer Smith's suspicions and caused him to seek the assistance of another officer, which resulted in a brief extension of the stop. Shreve was not under arrest at the time, and had Officer Smith not decided to further investigate the situation, Shreve would have been back on the road and free to dispose of the contraband contained inside his vehicle. *See Myers*, 839 N.E.2d at 1154.

Under the totality of the circumstances in this case, we conclude that the brief detention of Shreve beyond the period necessary to issue the traffic citation did not violate Article 1, Section 11.

We affirm.

Bailey, J. and Bradford, J., concur.

---

was constitutionally entitled to an advisement regarding the right to counsel before Lieutenant Lehman obtained his consent to search the truck. A *Pirtle* warning is required only when a defendant is in custody, not when he is "merely the subject of an investigative stop." *Campos v. State*, 885 N.E.2d 590, 601 (Ind. 2008). We need not determine whether a *Pirtle* warning was required here, however, because Shreve did not raise this issue below. *See Abran v. State*, 825 N.E.2d 384, 389 (Ind. Ct. App. 2005) ("A defendant may not argue one ground for objection at trial and then raise new grounds on appeal"), *trans. denied*.