## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2016, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David A. Martin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 12, 2016

Court of Appeals Case No.
49A04-1509-CR-1357

Appeal from the Marion Superior Court

The Honorable Peggy R. Hart, Commissioner.

The Honorable Shatrese M. Flowers, Judge.

Trial Court Cause No.
49G20-1405-FA-22457

**Altice, Judge.**

## Case Summary

Following a bench trial, David Martin was convicted of a number of drug and firearm offenses. On appeal, Martin argues that the trial court abused its discretion by admitting evidence obtained as a result of an unlawful warrantless entry into his home.

We affirm.

## Facts & Procedural History

Shortly after midnight on March 27, 2013, Officer Patrick Bragg of the Indianapolis Metropolitan Police Department was on patrol when a vehicle travelling southbound down an alley caught his attention. Officer Bragg followed the vehicle down the alley and saw it pull up next to a garage. At that time, Officer Bragg saw a man coming around the corner of the garage toward the parked vehicle. The man took off running when he saw Officer Bragg. Officer Bragg called for another officer in the area to pursue the man and then approached the occupants of the parked vehicle. The driver identified himself as David Petty and told Officer Bragg that he and his passenger had been dropping off a woman they knew as Dee Dee at the house. According to Petty, as Dee Dee exited the car, two men came out of the house. One of the men took off running after seeing Officer Bragg, and the other man "chased" Dee Dee into the house through the back door. *Transcript* at 90. Petty told Officer Bragg that he did not know what was going on, but that he did not believe that Dee Dee lived at the residence.

[4]     Officer Bragg was concerned for Dee Dee's safety, so he called another officer to the scene to assist him. When the other officer arrived, Officer Bragg knocked on the back door and announced his presence, and someone inside the house immediately began turning off the interior lights. Officer Bragg knocked again, and the other responding officer shined his spotlight on the house and used his PA system to ask the occupants of the house to come out. The officers got no response, and Officer Bragg heard a female voice that he believed to be yelling for help.

[5]     Officer Bragg requested the presence of a police supervisor and additional officers at the scene. Upon his arrival, the supervisor authorized a forced entry into the home for a welfare check on Dee Dee. The officers attempted to make entry by using a ram on the front door, and a man who would later be identified as Martin shouted from inside the house that he would open the door. Martin then exited through the back door and police entered the home. Officer Bragg located a woman in the dining room whom he eventually identified as Dee Dee. Dee Dee told Officer Bragg that she did not think there was anyone else in the house, but that she was unsure. Officers then performed a protective sweep of the home, during which they detected a strong odor of marijuana and observed a shotgun, a rifle, and multiple scales in plain view. After obtaining Martin's consent, police performed a full search of the home and recovered sixty-four grams of cocaine, fifteen grams of marijuana, and three guns.

[6]     As a result of these events, the State charged Martin with multiple drug and firearm offenses. Martin filed a motion to suppress all of the evidence

recovered from the home as the products of an unlawful warrantless entry. Specifically, Martin argued that the initial entry was not supported by exigent circumstances, and all subsequently recovered evidence was fruit of the poisonous tree. The trial court denied the motion and the matter proceeded to a bench trial on July 27, 2015. Evidence seized from the home was admitted into evidence over Martin's continuing objections at trial, and at the conclusion of the evidence, the trial court found Martin guilty as charged. After vacating two counts due to double jeopardy concerns, the trial court entered judgments of conviction for class A felony dealing in cocaine, class B felony possession of a firearm by a serious violent felon, class C felony possession of cocaine and a firearm, and class D felony possession of marijuana. Martin now appeals.

## Discussion & Decision

[7] On appeal, Martin argues that all evidence recovered from the home should have been excluded as the fruit of an unlawful warrantless entry. Martin initially challenged the admission of this evidence through a motion to suppress, and is now appealing its admission after a completed bench trial. Trial courts have broad discretion in ruling on the admissibility of evidence, and such rulings will be reversed only upon a showing of an abuse of that discretion. *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id*. In reviewing a trial court's evidentiary rulings, we will not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id.* We

also consider uncontroverted evidence in the defendant's favor. *Joseph v. State*, 975 N.E.2d 420, 424 (Ind. Ct. App. 2012).

### 1. Fourth Amendment

[8]     Martin first argues that the entry into his home violated his rights under the Fourth Amendment to the United States Constitution.

> The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment.  The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings.  For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies.  The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement

*Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006) (citations omitted).

[9]     In this case, the State argued and the trial court found that the warrantless entry into Martin's home was justified by exigent circumstances.  As this court has noted,

> [t]he existence of exigent circumstances falls within an exception to the warrant requirement.  In other words, the warrant requirement becomes inapplicable when the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.  Under the exigent circumstances exception, police may enter a residence without a warrant if the situation suggests

a reasonable belief that someone inside the residence is in need of aid. However, an officer's subjective belief that exigent circumstances exist is insufficient to justify a warrantless entry. Rather, the test is objective, and the government must establish that the circumstances as they appear at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house required immediate assistance.

*Joseph*, 975 N.E.2d at 425 (citations omitted). Officers do not, however, need "ironclad proof of a likely serious, life-threatening injury" to invoke the exigent circumstances exception. *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (internal quotation marks omitted).

[10] The evidence presented in this case amply supports the trial court's finding that the warrantless entry into Martin's home was supported by exigent circumstances. When Officer Bragg arrived at the scene, he observed one man take off running, and Petty told him that another man had chased Dee Dee into the house. When Officer Bragg knocked on the door, someone inside the house started turning off the interior lights. When police attempted to make contact with the occupants of the house using a PA system, they got no response. Moreover, Officer Bragg believed that he heard a woman yelling for help, although he could not make out words or pinpoint exactly where the voice was coming from. These facts were more than sufficient to support an objectively reasonable belief that someone inside the residence—namely, Dee Dee—was in need of aid. Accordingly, the warrantless entry into Martin's home did not violate the Fourth Amendment to the United States Constitution.

## 2. Article 1, Section 11

[11] Martin also argues that the warrantless entry into his home violated Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11, like the Fourth Amendment, bars unreasonable searches and seizures. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). "Although Indiana's Section 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct." *Id.* Specifically, while Fourth Amendment analysis turns on whether the subject of a search had a reasonable expectation of privacy, analysis under Article 1, Section 11 turns on whether the police conduct was reasonable under the totality of the circumstances. *Id.* at 1001-02. In evaluating the reasonableness of police conduct, we consider: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 1002 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). The State bears the burden of establishing that the police conduct was reasonable. *Id.*

[12] We acknowledge, and the State concedes, that the degree of police intrusion in this case was great—police used a battering ram to attempt to gain entry into Martin's home. Balanced against this intrusion, however, are a very high degree of concern that a violation was occurring and considerable law enforcement needs. Petty told Officer Bragg that a man had chased Dee Dee into the home, and when Officer Bragg knocked on the door, someone inside started turning off the interior lights. Police got no response when they used

their PA system to ask the occupants of the house to come outside, and Officer Bragg heard what he believed to be a woman yelling for help. Under these circumstances, we cannot conclude that the officers' decision to take immediate action to ensure Dee Dee's safety was unreasonable. Indeed, it is plainly reasonable for police to forego seeking a warrant under circumstances such as these, where a person appears to be in imminent peril. We therefore conclude that the warrantless entry into Martin's home did not violate Article 1, Section 11 of the Indiana Constitution.

[13] Judgment affirmed.

[14] Bailey, J. and Bradford, J., concur.