## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rafeal A. Faulkner,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 15, 2017

Court of Appeals Case No.
79A05-1605-CR-1103

Appeal from the Tippecanoe
Superior Court

The Honorable Laura W. Zeman,
Judge

Trial Court Cause No.
79D04-1508-F6-178

**Bailey, Judge.**

# Case Summary

[1] Rafeal A. Faulkner ("Faulkner") appeals his convictions for two Class A misdemeanors: Maintaining a Common Nuisance[1] and Taking a Child to a Nuisance;[2] and one Class B misdemeanor, Possession of Marijuana.[3] Faulkner presents the issue of whether the trial court abused its discretion in admitting evidence gained in a warrantless search of Faulkner's residence. We reverse.

# Facts and Procedural History

[2] On August 24, 2015, a health care facility contacted the Tippecanoe County Sheriff's Office for assistance in retrieving keys from a terminated employee. Sergeant Robert Hainje was dispatched to an address in Richmond Court, an apartment complex with buildings containing four units each. When Sergeant Hainje entered a common hallway, he could detect the odor of marijuana. Sergeant Hainje requested additional officers[4] and waited for a few minutes before knocking at the door of Apartment B.

[3] After Sergeant Hainje knocked four times, Faulkner opened the door and stepped into the hallway. Sergeant Hainje detected a stronger odor of burnt

---

[1] Ind. Code § 35-48-4-13.

[2] I.C. § 35-48-4-13.3 [repealed effective July 1, 2016].

[3] I.C. § 35-48-4-11.

[4] No officer other than Sergeant Hainje testified at either the suppression hearing or bench trial. Sergeant Hainje testified that other officers arrived and subsequently "cleared the apartment." (Suppression Hrg. Tr. at 15.)

marijuana and saw a smoky haze inside the apartment. Sergeant Hainje asked if Adrianna Baker lived there, if any additional adults were inside the apartment, and if Faulkner could retrieve the health facility keys. Faulkner advised that Baker sometimes stayed there and adults other than Baker were then present; he agreed to get the keys from a bedroom.

[4] Faulkner moved back into his apartment, "let[ting] the door shut easily." (Tr. at 25.) As the door began to close, Sergeant Hainje "held [his] hand against the door because [Faulkner] said there were additional adult males in there" and Sergeant Hainje wanted to "freeze the situation." (Tr. at 26.) Sergeant Hainje stepped across the threshold and entered the apartment.

[5] Sergeant Hainje directed one of the apartment occupants to sit on the sofa. He asked Faulkner if they could speak privately and they walked together to a back bedroom. Sergeant Hainje requested that Faulkner consent to a premises search and advised Faulkner of his *Miranda*[5] and *Pirtle*[6] rights to consult with an attorney. Faulkner responded that "he would show [Sergeant Hainje] where the marijuana was." (Tr. at 12.) Faulkner displayed an ashtray that contained two small marijuana cigarettes. He was arrested and charged with offenses related to marijuana possession and consumption in the presence of his two small children.

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] *Pirtle v. State*, 263 Ind. 16 (1975).

[6] Prior to trial, Faulkner moved to suppress the evidence gained as a result of the residential entry. Following a suppression hearing, the motion was denied upon the trial court's determination that Faulkner had consented to the search. On March 24, 2016, Faulkner was tried in a bench trial and convicted of the charges against him, with the conviction for Maintaining a Common Nuisance entered as a misdemeanor conviction as opposed to a Level 6 felony. Faulkner received an aggregate sentence of two years, all suspended to probation. This appeal ensued.

## Discussion and Decision

[7] Faulkner argues that Sergeant Hainje's warrantless entry into his apartment violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[7] He asks that we review the denial of his motion to suppress. However, where a pretrial motion to suppress is denied, the case proceeds to trial, and the defendant renews his objection to the admission of evidence, the issue is best framed as challenging the admission of evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013).

---

[7] Although Faulkner references the Indiana Constitution in his brief, he then fails to develop a corresponding argument with respect to the analysis set forth in *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005), that is: the degree of concern, suspicion, or knowledge that a violation has occurred, the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and the extent of law enforcement needs.

[8] In ruling on admissibility after the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). Also, the trial court considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. *Id.* Because the trial court is best able to weigh the evidence and assess witness credibility, we review admissibility rulings for an abuse of discretion. *Id.* We reverse only when admission is clearly against the logic and effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Id.* However, the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. *Id.*

[9] Faulkner concedes having given a verbal assent to search; however, he maintains that his consent was "invalidated by [Sergeant Hainje]'s illegal entry." Appellant's Br. at 23. The State responds that exigent circumstances, relative to the imminent destruction of evidence, supported Sergeant Hainje's warrantless entry into the apartment and that, "regardless of [Sergeant] Hainje's conduct in entering the apartment," Faulkner's consent was "voluntary and valid." Appellee's Br. at 23.

[10] The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." The Fourth Amendment's protections against unreasonable searches and seizures extend to the States

through the Fourteenth Amendment. *Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 650 (1961)).

[11]   "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001) (quoting *U.S. v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972)). A principal protection against unnecessary intrusions into private dwellings is the Fourth Amendment's warrant requirement. *Straub*, 749 N.E.2d at 597. Searches performed by government officials without obtaining warrants are *per se* unreasonable under the Fourth Amendment, subject to a "'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. U.S.*, 389 U.S. 347, 357 (1967)).

[12]   "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency." *Kentucky v. King*, 563 U.S. 452, 470, 131 S. Ct. 1849, 1862 (2011). Exigent circumstances have been found: (1) where a suspect is fleeing or likely to take flight in order to avoid arrest; (2) where incriminating evidence is in jeopardy of being destroyed or removed absent an immediate arrest; (3) where a violent crime has occurred and entry by police can be justified to prevent further injury or aid the injured; and (4) in cases that involve hot pursuit or movable vehicles. *Straub*, 749 N.E.2d at 597-98. The State bears the burden of proving that an exception to the warrant requirement applied at the time of a warrantless search. *Id.* at 598. The remedy for an illegal warrantless search is the suppression of the evidence obtained from the

search. *Cudworth v. State*, 818 N.E.2d 133, 137 (Ind. Ct. App. 2004), *trans. denied*.

[13] Our supreme court has explained the circumstances where the exigency of imminent destruction of evidence may be found applicable:

> Exigent circumstances justifying a warrantless search exist where the police have an objective and reasonable fear that the evidence is about to be destroyed; the arresting officers must have a reasonable belief that there are people within the premises who are destroying or about to destroy the evidence. In such a case, the evidence's nature must be evanescent and the officers must fear its imminent destruction. The fact that narcotics are involved does not, standing alone, amount to exigent circumstances justifying a warrantless search or seizure.

*Esquerdo v. State*, 640 N.E.2d 1023, 1027 (Ind. 1994) (quoting *Harless v. State* (1991), Ind. App., 577 N.E.2d 245, 248 (citations omitted)). When this exception to the warrant requirement is asserted, the State is required to show evidence that the police had an objective and reasonable fear that the evidence was about to be destroyed. *Esquerdo*, 640 N.E.2d at 1027. "Federal law requires this showing to be made by clear and convincing evidence." *Id*.

[14] Turning to the particular facts of this case, we note that the sole witness at the bench trial was Sergeant Hainje. Sergeant Hainje testified that he smelled marijuana in a common hallway and summoned other officers. As he waited for the others, Sergeant Hainje stood in the hallway and "continued to hear loud music." (Tr. at 7.) After a while, the music stopped and Sergeant Hainje heard hushed voices, "scurrying," and movement inside the apartment. (Tr. at

8.)  The music resumed.  Sergeant Hainje knocked at the door "after the music started back up."  (Tr. at 8.)  By this time, Faulkner had sprayed some air freshener.

[15]  Sergeant Hainje's testimony suggests that he subjectively feared that evidence might be destroyed, although he stopped short of explicitly stating as much.  He testified that he pushed against Faulkner's door and entered the apartment "just to observe for the additional adult persons that were in the apartment and to just kind (inaudible) the situation so that I could determine what further action needed to be pursued."  (Tr. at 10.)  He reiterated on cross-examination: "[The door] began to close and that's when I held my hand against the door because he said there were additional adult males in there.  As well as I wanted to freeze the situation due to the overwhelming odor of marijuana and the haze that was present."  (Tr. at 25-26.)

[16]  We disapprove of the rationale that the presence of adult males in a private apartment is, without more, predictive of destruction of evidence.  The fact that a citizen has guests – few or many, male or female – is not an exigent circumstance supporting a warrantless intrusion.  Nor is a professed desire to maintain the status quo or facilitate further investigation an exigency.  Indeed, "[f]reedom from intrusions into the home or dwelling is the archetype of the privacy protections secured by the Fourth Amendment."  *Snellgrove*, 469 N.E.2d 337, 340 (Ind. 1991).

[17] Apart from the concern as to the presence of adult males, we are left with the testimony that sounds were heard coming from inside the apartment and air freshener had been sprayed, in an apparently unsuccessful attempt to mask odor. There is no evidence of yelling or frenetic activity. *See e.g., Harless*, 577 N.E.2d at 248-49 (finding police officers' warrantless search illegal under the destruction of evidence exigent circumstance in part because officers did not "observe any persons inside the home scrambling frantically to destroy evidence of controlled substances before the officers entered"). Ultimately, there is insufficient evidence of an "objective and reasonable fear" that evidence was about to be destroyed when Sergeant Hainje entered the apartment without a warrant. *Id.* at 248.[8]

[18] Notwithstanding the circumstances surrounding the entry, the State contends that Faulkner gave a valid consent to search after receiving *Miranda* and *Pirtle* warnings. In *Galvin v. State*, 582 N.E.2d 421 (Ind. Ct. App. 1991), *trans. denied*, the State argued that, even if police entry was illegal, the defendant's consent to search was valid because it was not the result of the entry. Within an hour after

---

[8] The State also argues that "the conduct was chiefly motivated by [Sergeant] Hainje's concern about unknown adult males in the home under circumstances where illegal drugs were being consumed" and therefore, "Deputy Hainje was not legally required to obtain express consent from Defendant to put his hand on the door to allow him to observe, or to simply step inside the apartment." Appellee's Br. at 18-19. To the extent that the State may be said to claim that "officer safety" justified the warrantless entry, the State has identified no authority for the proposition that subjective safety concerns, in the absence of exigent circumstances, provide an exception to the warrant requirement of the Fourth Amendment. Moreover, the evidence does not support the State's contention that officer safety was a legitimate concern when Sergeant Hainje entered the apartment alone and confronted the risk of unknown occupants rather than to wait outside the door until other officers arrived to back him up.

the officers made an illegal entry into the defendant's home, and with several officers still present, the defendant was requested to give her consent to a search. She was not told that the court had refused to give the officers a search warrant. *See id.*

[19] On appeal, the court observed that the relevant inquiry was "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* at 424 (quoting *Snellgrove*, 569 N.E.2d at 341). Several factors were to be considered in determining whether a consent to search given after an illegal entry is an act of free will sufficient to purge the primary taint: whether *Miranda* warnings were given; the temporal proximity of the illegal entry and the consent to search; the presence of intervening circumstances; the voluntariness of the consent; and particularly the purpose and the flagrancy of the official misconduct. *Id.* The *Galvin* Court found that the defendant's consent was not given voluntarily and independent of the illegal entry and thus the consent was invalid. *Id.*

[20] In *Ware v. State*, 782 N.E.2d 478 (Ind. Ct. App. 2003), a panel of this Court was again presented with the State's argument that consent to search was not the product of an illegal entry and was valid. The defendant was given a *Miranda* warning; however, he was asked to consent to a search within minutes of an officer's warrantless entry into his home. *See id.* at 483. There were no intervening circumstances between the warrantless entry and the request for consent, other than the arrival of additional police officers. *Id.* "The purpose of

Officer Carpenter's warrantless entry was to secure the residence for the possible discovery of marijuana; however, no exigent circumstances existed." *Id.* The Court made a final observation as to the flagrancy of the misconduct: "we note that a warrantless home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense has been committed. *Id.* (citing *Haley v. State*, 696 N.E.2d 98, 103 (Ind. Ct. App. 1998), *trans. denied*). The Court declined to "overlook the inherent coercive effect" of the intrusion upon Ware's decision to consent and concluded that Ware's consent had not been given voluntarily and independently of the illegal entry. *Id.*

[21] Here, Faulkner was retrieving keys at Sergeant Hainje's request when Sergeant Hainje entered Faulkner's residence "to freeze the situation." (Tr. at 26.) The entry was not prompted by exigent circumstances. Sergeant Hainje took control of the premises by commanding Faulkner's guest to sit on the sofa and asking Faulkner if they could speak privately. Without intervening circumstances or appreciable lapse of time, Faulkner was presented with a request that he consent to a premises search. Faulkner was given *Miranda* and *Pirtle* advice. According to Sergeant Hainje, Faulkner was "obviously not free to leave at that point." (Suppression Hrg. Tr. at 20.) There was probable cause to believe that a minor offense of possession of marijuana had been committed; also, law enforcement knew that children were present.

[22] An application of the factors found relevant in *Galvin* and *Ware* leads us to the same conclusion here. Although Faulkner received advice of rights, we cannot

say that his consent was given voluntarily and independent of the illegal entry. His consent, the product of an illegal entry, was invalid.

# Conclusion

The evidence obtained as a result of Sergeant Hainje's warrantless entry into Faulkner's apartment should have been suppressed. The trial court erred in admitting that evidence.

Reversed.

Najam, J., and May, J., concur.