## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 30 2017, 8:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Blackketter Law, LLC
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Yvonne Howery,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 30, 2017

Court of Appeals Case No.
70A01-1609-CR-2127

Appeal from the Rush Superior Court

The Honorable Brian D. Hill, Judge

Trial Court Cause No.
70D01-1506-F5-336

**Najam, Judge.**

# Statement of the Case

Yvonne Howery appeals her convictions for possession of cocaine, as a Level 5 felony; maintaining a common nuisance, a Level 6 felony; neglect of a dependent, as a Level 6 felony; and dealing in marijuana, as a Class A misdemeanor, following a jury trial. Howery presents three issues for our review, which we consolidate and restate as the following issues:

1. Whether the trial court abused its discretion when it denied her motion to continue the trial.

2. Whether the trial court abused its discretion when it admitted certain evidence over her objections.

We affirm.

# Facts and Procedural History

In June 2015, after receiving complaints about a large number of people coming and going and spending short periods of time at Howery's residence, officers with the Rushville Police Department began an investigation. At that time, Howery shared the residence with her husband, Darrell Howery ("Darrell"), and their children. As part of the investigation, officers surveilled the residence and observed activity consistent with the complaints, including "multiple vehicles where there would be multiple occupants in the vehicle. The vehicle would pull up. One person [would] get out, go in the residence for a short period of time. That person would walk back out[,] and the vehicle would pull away." Tr. at 63-64. As a result, officers expanded their investigation.

[3] At that point, a confidential informant ("CI") contacted the police and told them that Howery, also known as "Big Mama[,] . . . was using juveniles to sell marijuana," and the CI told them that Howery and her husband "were also selling a large amount of drugs to juveniles" and adults. *Id.* at 66-67. Then, on June 20, Rushville Police Officer Alan Wombold was driving an unmarked police vehicle past the Rush County Fair when he saw two men and a woman behind a trailer conduct a "hand-to-hand exchange." *Id.* at 67. Officer Wombold then followed the two men, Loren Collins and Brandon Moon, who walked to Howery's residence and went inside. Approximately ten minutes later, Collins and Moon left Howery's residence, and Officer Wombold followed them in his car as they walked back to the fairgrounds. Once back at the Fair, Officer Wombold exited his vehicle and watched as Collins and Moon approached two men, one at a time, behind the trailers. After the second man walked away from Collins and Moon, Officer Wombold approached him, identified himself as an officer, and asked the man what Collins and Moon were doing. The man responded that one of the men had attempted to sell him marijuana.

[4] Officer Wombold then approached Collins and Moon, stopped them, and conducted a pat-down search of their persons. Officer Wombold found a baggie containing marijuana in Collins' pants pocket. Officer Wombold and another officer who had arrived at the scene arrested Collins and Moon and transported them to the police station. During an interview, Collins denied having bought marijuana from Howery, but, after Officer Wombold explained

that Howery's residence had been under surveillance and that he had seen Collins go to the residence, Collins responded, "Then, you must know then." *Id.* at 70. Collins told Officer Wombold that, while he had not bought marijuana from Howery, "he knew she sold to a lot of . . . younger kids." *Id.* at 71.

[5] On June 24, unrelated to the Howery investigation, Officer Wombold conducted a controlled drug buy for cocaine targeting Robert Koohns. The CI went to Koohns' residence and gave him the buy money, and then, while the CI waited, Koohns rode his bicycle to Howery's residence. After a short time, Koohns left Howery's residence, rode his bicycle back to his own residence, and gave cocaine to the CI.

[6] That night, Rushville Police Officers obtained and executed a search warrant for Howery's residence. Both Howery and Darrell were home, as well as their children. Howery agreed to talk to Officer Wombold, and she told him that there was a bag of marijuana in a dresser in her bedroom, but she denied using "any hard drugs." *Id.* at 77. In the course of the ensuing search, officers found: marijuana and cocaine in Howery's bedroom; a glass pipe with methamphetamine residue in it; a digital scale in Howery's purse; multiple unsecured firearms and ammunition; and a surveillance system. The officers observed deplorable living conditions in the residence, including dog feces on the floor. Accordingly, Officer Wombold advised Howery that she and Darrell were being arrested and that he was contacting the Department of Child Services. In response, Howery asked to speak with Officer Wombold privately.

Howery denied selling marijuana to young children. Howery stated that "85%" of her drug sales were to adults, and she did not know the ages of the children she sold drugs to. *Id.* at 78. Howery insisted that she and Darrell sold only marijuana. Officer Wombold asked Howery whether "she was using juveniles to sell narcotics for her," and she responded that, "when the juveniles leave the residence, she doesn't know what they do with the drugs." *Id.* at 79. Howery admitted that she "had been selling narcotics for, roughly, about two months[.]" *Id.* The day after her arrest, a drug test revealed that Howery had ingested cocaine.

The State charged Howery with possession of cocaine, as a Level 5 felony; maintaining a common nuisance, a Level 6 felony; neglect of a dependent, as a Level 6 felony; dealing in marijuana, as a Class A misdemeanor; and possession of marijuana, as a Class B misdemeanor. A jury found Howery guilty as charged. The trial court entered judgment of conviction on all but the Class B misdemeanor charge and sentenced Howery to an aggregate term of four years, with one year suspended to probation. This appeal ensued.

## Discussion and Decision

### *Issue One: Motion to Continue*

Howery first contends that the trial court abused its discretion when it denied her motion to continue her trial. In particular, Howery maintains that the State denied her access to the surveillance equipment confiscated from her residence to review the recordings until four days before trial. Howery asserts that that

was not enough time to review the many hours of recordings in order to prepare her defense.

[10] Courts are generally reluctant to grant continuances in criminal cases merely to allow for additional preparation. *Gibson v. State*, 43 N.E.3d 231, 235-36 (Ind. 2015). "But a defendant is statutorily entitled to a continuance where there is an 'absence of material evidence, absence of a material witness, or illness of the defendant, and the specially enumerated statutory criteria are satisfied.'" *Id.* at 236 (quoting *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995) (citing Ind. Code § 35-36-7-1). If none of those conditions are present, however, a trial court has wide discretion to deny a motion to continue. *Id.* We will only find an abuse of that discretion where a defendant was prejudiced as a result of not getting a continuance. *Id.* "To demonstrate such prejudice, a party must make a 'specific showing as to how the additional time requested would have aided counsel.'" *Id.* (quoting *Carter v. State*, 686 N.E.2d 1254, 1261 (Ind. 1997)).

[11] Howery contends that she was entitled to a continuance of her trial due to "newly discovered evidence," namely, the "DVR recording device which contained video taken by a security camera at the front entrance to [her] home." Appellant's Br. at 8-9. Howery maintains that her counsel "was made aware of the possible existence of the DVR recording device on August 9th" and "the State offered to turn it over to defense counsel for viewing on August 12th," four days before her scheduled trial. *Id.* at 9. Howery asserts that "the location of that DVR . . . was unknown [prior to that date] because it was not in

Howery's residence and it was not listed on the inventory Return from execution of the search warrant." *Id.*

[12] The State points out, and Howery does not deny, that she knew the night of her arrest that officers took the surveillance equipment, but she had told the officers that the equipment was inoperable. It was only after Howery, through her newly-hired counsel, informed the prosecutor that the DVR was functional and contained recordings that the State learned about the possible evidence, and it immediately made the recordings available to Howery. In any event, the State did not include the recordings in its exhibits list and did not intend to use them at trial.

[13] In her motion to continue the trial, Howery alleged that,

> upon reviewing the contents of the DVR recording device, evidence *may reveal* that the search warrant issued by this court was based upon inaccurate information and that as such, the defense may properly file a motion asking that the search warrant—and the fruits of that warrant—be suppressed and excluded from the evidentiary presentation to a jury. Defense already has a good faith belief based upon independent evidence that *may be corroborated* by the video that the police have not been accurate in their police reports.

> \* \* \*

> For example, if certain people appear on the video that would be characterized by the police or prosecutor as purchaser[s] of drugs, or might be inaccurately believed by a jury to be purchasers of drugs, the defense simply will have no time to conduct an investigation as to who these people are and to question these

people as to what they were doing at the house, which could be completely harmless.

Appellant's App. at 96-97 (emphases added).

[14] On appeal, Howery contends that she "was prejudiced here because the video recording discovered just days before trial was so substantial that it could not be viewed in that timeframe, let alone assessed and investigated." Appellant's Br. at 10. But, having had unfettered access to the recordings in preparation for this appeal, Howery does not state what, if any, exculpatory evidence those recordings contain and how that evidence would have been used in her defense at trial had she had adequate time to review the recordings. In other words, Howery has not made a "specific showing as to how the additional time requested would have aided counsel." *See Carter*, 686 N.E.2d at 1261. We cannot say that the trial court abused its discretion when it denied Howery's motion to continue her trial.

### Issue Two: Admission of Evidence

[15] Howery next contends that the trial court abused its discretion when it allowed the State to present alleged hearsay evidence and evidence of Howery's prior bad acts. In particular, the trial court admitted over Howery's objections the following evidence: Officer Wombold's testimony that a CI had told him that Howery was "known as 'Big Mama' [and] was using juveniles to sell marijuana outside of her home"; Officer Wombold's testimony that Collins told him that "he knew Yvonne Howery sold a lot of marijuana to younger kids"; and

Koohns' testimony that Darrell had sold him cocaine from Howery's residence the night of Howery's arrest. Appellant's Br. at 11, 14.

[16] Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015) (quoting *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995)).

> "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion' and only reverse 'if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights."

*Id.* (quoting *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014)).

[17] We need not decide whether the trial court abused its discretion when it permitted the challenged evidence because any error was harmless. As our supreme court has held,

> not every trial error requires reversal. Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995); Ind. Trial Rule 61. To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury.

The evidence that Howery possessed cocaine, dealt marijuana, maintained a common nuisance at her residence, and neglected her children was overwhelming. Officers found cocaine in plain view in Howery's bedroom; it was on top of the dresser where Howery had told officers they could find marijuana. Further, Howery tested positive for cocaine the day after her arrest.

Howery admitted to Officer Wombold that she had sold marijuana and that she had been doing so, out of her home, for approximately two months prior to her arrest. Howery had a digital scale in her purse. And, finally, the State presented ample photographic evidence and testimony regarding the deplorable conditions of Howery's home, including dog feces on the floor and unsecured firearms. In light of the substantial independent evidence of Howery's guilt, we conclude that any error in the admission of the alleged hearsay testimony, evidence of Howery's prior bad acts, and Koohn's testimony regarding Darrell's cocaine dealing was harmless.

[18] Affirmed.

Riley, J., and Bradford, J., concur.