ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana



FILED

May 22 2017, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler R. Browder<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 22, 2017<br><br>Court of Appeals Case No.<br>49A04-1608-CR-1857<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Linda E. Brown, Judge<br><br>Trial Court Cause No.<br>49G10-1412-CM-53390 |

**Mathias, Judge.**

[1] Tyler Browder ("Browder") appeals his conviction for Class A misdemeanor possession of paraphernalia. Browder argues that the Marion Superior Court abused its discretion by admitting into evidence the paraphernalia discovered when a police officer searched his vehicle during a traffic stop. Browder specifically claims that the police officer unreasonably extended the length of

the traffic stop in violation of the Fourth Amendment of the United States Constitution and Article One, Section Eleven of the Indiana Constitution.[1]

We affirm.

## Facts and Procedural History

On November 11, 2014, Indianapolis Metropolitan Police Officer Brady Ball ("Officer Ball" "Ball," or "the officer") was working "pro-active patrol" on the south side of Indianapolis in a high crime area. Tr. p. 5. Officer Ball was tasked with traffic enforcement in the area.

At approximately 11:40 p.m., Officer Ball came to a stop at a traffic light and ran the license plate of the Pontiac vehicle stopped in front of him. The license plate was registered to a silver Audi. Therefore, Ball initiated a traffic stop to investigate the improperly plated vehicle.

Browder, the driver and only occupant of the vehicle, pulled the car over into a nearby gas station parking lot. Officer Ball asked Browder about the license plate and Browder replied that

> it was he and his [wife's] vehicle that they had purchased it and that they, um, were under the impression that a license plate –a transfer plate could be placed on the vehicle.

___

[1] We held oral argument in this case at Cathedral High School in Indianapolis, Indiana on April 26, 2017. We thank the faculty, staff, and students for their gracious hospitality. We also wish to congratulate the school's We the People team for their third place finish at the national We the People competition held in Washington D.C. in April.

Tr. p. 6. Ball told Browder that he was correct but that "they needed to have a bill of sale or title to go along with that transfer plate." *Id*. Browder, who stated that he had purchased the car for approximately one week prior, was not able to produce any paperwork for the vehicle.

[6] Ball requested Browder's driver's license and ran it through his computer. From the information returned, the officer discovered that Browder had a criminal history, including a reference to an auto theft. The officer also could not find a registration for the Pontiac under Browder's name. In addition, Browder's name was not listed on the registration for the license plate registered to the silver Audi. Ball was in his patrol car for several minutes running computer checks to obtain this information.

[7] Approximately fifteen minutes after the stop was initiated, and after Officer Ball reviewed Browder's driver's license records and criminal history and could not find a Pontiac registered to Browder, Ball was still suspicious that the Pontiac was possibly a stolen vehicle, and he decided to investigate further. He asked Browder to step out of the vehicle and about his prior arrest record. When Ball asked about the auto theft, Browder replied that he was arrested as a juvenile but had not been arrested for a stealing a car.

[8] The officer continued to question Browder about paperwork related to the sale of the vehicle and its previous owner. Browder stated that the license plate on the Pontiac belonged to him and to his wife, Kayla Lanahan. When asked about the different last names, Browder explained that they were married but

that his wife had not changed her last name. Browder told Officer Ball that there was no paperwork from the prior owner in the vehicle. The officer asked for specific details about the recent purchase of the vehicle. Browder stated that the car was a 1992 or 1996 Pontiac model that they purchased for $700. Browder told the officer that he had been driving to Taco Bell, and the officer questioned Browder about his choice of a circuitous route to the restaurant.

[9] Finally, approximately seventeen minutes into the stop, Officer Ball asked Browder if anything illegal was inside the vehicle. Browder said there was not and told the officer he could search the vehicle. Tr. p. 19. Browder's statement surprised Officer Ball, and he gave Browder a *Pirtle* warning.[2] Tr. p. 13. Officer Ball also told Browder that when individuals allow officers to search "illegal stuff" can be found. *Id*. Browder replied that he had "nothing to hide." *Id*. After the advisements and warnings, Browder continued to consent to the vehicle search.

[10] As he searched the vehicle, Officer Ball found the vehicle's VIN number and discovered it was a 2001 Pontiac. The officer also found a glass pipe used to smoke marijuana in an insert in the center console, which later tested positive for THC residue. The officer then arrested Browder and read him his Miranda

---

[2] In *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975), our supreme court held that a person held in police custody is entitled to the presence and advice of counsel prior to consenting to a search. Officer Ball's *Pirtle* warning was incomplete and lacked the advisement that an attorney would be provided to Browder if he could not afford one, but the officer was not required to give the warning because Browder was not in custody when he told the officer that he could search the car.

rights. Browder told Officer Ball that the pipe was not his and that a friend must have left it in the vehicle.

[11] A bench trial was held on March 7 and July 20, 2016. Browder filed a motion to suppress the pipe found in the vehicle. The trial court denied the motion and found Browder guilty of Class A misdemeanor possession of paraphernalia. He was then ordered to serve 365 days, with 349 days suspended to probation and 16 days credit for time served. The State declined to prosecute the infraction for operating a vehicle on a transferred plate for more than thirty-one days. Browder now appeals.

## Standard of Review

[12] Our review of a denied motion to suppress, when following a trial at which the challenged evidence was admitted, is properly a review of the trial court's decision to admit the evidence. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). We review the trial court's ruling on admissibility for abuse of discretion, reversing only if the ruling is clearly against the logic and effect of the facts, and the error effects substantial rights. *Id*. The constitutionality of a search or seizure is a pure question of law we review de novo. *Id*. Browder argues that the traffic stop and subsequent search violated both the Fourth Amendment of the United States Constitution and Article One, Section Eleven of the Indiana Constitution.

## Fourth Amendment

Browder argues that Officer Ball unreasonably prolonged the traffic stop in violation of the Fourth Amendment, which provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966).

A traffic stop of a vehicle and temporary detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). However, "[i]t is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). Browder properly concedes that the initial traffic stop was valid because the license plate on his car was not registered to that vehicle.

However, Browder argues that Officer Ball unreasonably prolonged the traffic stop and that the stop should have ended after the officer completed his check of Browder's driver's license and the license plate approximately fifteen minutes after the stop began.

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and

inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("It is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.").

[16] The United States Supreme Court recently re-emphasized that a police officer cannot "incremental[ly]" lengthen a traffic stop by even a *de minimis* amount beyond the time needed to complete the mission of the stop. *Rodriguez v. United States*, —— U.S. ——, 135 S.Ct. 1609, 1616 (2015). Tasks that an officer may undertake related to the traffic stop typically "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*, —— U.S. at ——, 135 S.Ct. at 1615.

[17] Whether the officer has unreasonably prolonged a traffic stop is a fact-sensitive determination. In *United States v. Sharpe*, 470 U.S. 675 (1985), the United States Supreme Court observed that

> our cases impose no rigid time limitation on *Terry* stops. While it is clear that "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable

on reasonable suspicion," we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. Much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

*Id.* at 685 (internal citations omitted). The Court also explained that it is appropriate "to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686. Courts "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *See id.*

[18] The *Rodriguez* Court reemphasized that "[a]n officer, … may conduct certain unrelated checks during an otherwise lawful traffic stop. But … he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 135 S.Ct. at 1615.

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id*. (internal citations omitted).

In this case, Officer Ball needed to determine why the Pontiac was not properly plated, to whom the vehicle was registered, and whether it was possibly stolen. Browder gave his explanation for the transferred plate to Officer Browder and provided his driver's license. The officer requested a check of Browder's license and criminal history and ran a records check on the vehicle. Browder argues that once these tasks were completed, approximately fifteen minutes into the stop, the purpose for the traffic stop was complete. In response, the State argues that Officer Ball's continued questioning of Browder was related to the purpose of the stop, i.e., that the license plate was not registered to the vehicle, Browder had no paperwork establishing that he owned the vehicle, and the officer could not find any registration records for the Pontiac.

Any delay beyond the fifteen-minute period, which Browder accepts as reasonable, was due to Officer Ball's suspicion that Browder was not in lawful possession of the vehicle. If his suspicion that Browder was engaged in criminal activity was reasonable, the prolonged detention does not violate the Fourth Amendment. *See State v. Gray*, 997 N.E.2d 1147, 1153 (Ind. Ct. App. 2013), *trans. denied*.

> "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." "Thus, a reviewing court must examine the totality of

circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."

*Id*. (citations omitted). *See also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating "[w]hen discussing how reviewing courts should make reasonable suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing") (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

[21] Browder and the State disagree whether the totality of the following circumstances gave rise to reasonable suspicion that Browder did not legally possess the Pontiac. These include 1) Officer Ball's suspicion that the vehicle was stolen because of the transferred plate and lack of paperwork,[3] 2) Browder's prior drug arrests and a reference to an auto theft in the criminal records check, 3) that Browder was driving through a high crime area near midnight, and 4) Browder's inability to recall whether the vehicle was a 1992 or 1996 model,[4]

---

[3] Browder extensively discusses statutory requirements for transferred plates in his brief. Specifically, the statute in effect on the date of the traffic stop required the "registrant" to have the bill of sale or other paperwork establishing ownership in his or her possession. *See* Ind. Code § 9-18-6-5. Browder argues that he was not the registrant, his wife was, and therefore, he was not required to have any paperwork in his possession. A new version of the statute went into effect on January 1, 2017 that requires the vehicle operator to have documents in that person's possession establishing ownership of the vehicle if the vehicle is not yet registered and the person "displays a valid and unexpired transferred plate." *See* Ind. Code 9-18.1-2-8. Officer Ball's misunderstanding of the law on the date of the stop is of limited relevance to the outcome of this appeal given his valid concern over the mismatched license plate and whether the vehicle was possibly stolen.

[4] As a result of the search, Officer Ball obtained the VIN number and determined that the Pontiac was a 2001 model.

and 5) Browder's claim that he was driving to a nearby Taco Bell because the street Browder was travelling on was not a direct route between the restaurant and Browder's observed exit from a residential area.

[22] Because no paperwork was in the vehicle documenting the sale to Browder or his wife (even though Browder may not have been required by statute to keep the paperwork in his possession), and the license plate on the vehicle was registered to a different vehicle whose owner did not share Browder's name, we conclude that Officer Ball had reasonable suspicion to continue investigating who owned the Pontiac. Browder's criminal history, albeit limited but with a reference to an auto theft, also supports our conclusion that the officer had reasonable suspicion that the vehicle might be stolen. Therefore, prolonging the traffic stop an additional two to three minutes did not violate the Fourth Amendment.

[23] Approximately three minutes after the officer resumed his questioning of Browder (seventeen minutes into the stop), Browder told Officer Ball that he could search the Pontiac. A warrantless search based on lawful consent is consistent with both the Indiana and Federal Constitutions. *Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008) (citing *Perry v. State*, 638 N.E.2d 1236, 1240 (Ind. 1994); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

> The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. When the State relies upon consent to justify a warrantless search, it has the

burden of proving that the consent was, in fact, freely and
voluntarily given.

*Ammons v. State*, 770 N.E.2d 927, 933 (Ind. Ct. App. 2002), *trans. denied*
(citations omitted). "A consent to search is valid except where it is procured by
fraud, duress, fear, intimidation, or where it is merely a submission to the
supremacy of the law." *Navarro v. State*, 855 N.E.2d 671, 675 (Ind. Ct. App.
2006). "Knowledge of the right to refuse a search is one factor which indicates
voluntariness." *Id.*

[24] Whether consent to search was voluntary is a question of fact determined from
the totality of the circumstances. *Id.* These include, but are not limited to,

> (1) whether the defendant was advised of his Miranda rights prior
> to the request to search; (2) the defendant's degree of education
> and intelligence; (3) whether the defendant was advised of his
> right not to consent; (4) whether the detainee has previous
> encounters with law enforcement; (5) whether the officer made
> any express or implied claims of authority to search without
> consent; (6) whether the officer was engaged in any illegal action
> prior to the request; (7) whether the defendant was cooperative
> previously; and (8) whether the officer was deceptive as to his
> true identity or the purpose of the search.

*Id.* (citation omitted).

[25] In this case, after Officer Ball asked Browder if anything illegal was in the
vehicle, Browder offered to allow Ball to search the car. Officer Ball had not
requested permission to search the car, and he warned Browder that when
individuals allow officers to search "illegal stuff" can be found. Tr. p. 13. The

officer also told Browder that he had a right to the presence and advice of counsel before he consented to the search. Browder then continued to consent to the search of the vehicle. Under the totality of these circumstances, Browder's consent to search was voluntary, and the warrantless search did not violate the Fourth Amendment. For all of these reasons, the trial court did not abuse its discretion when it admitted the paraphernalia into evidence.

### *Article I, Section 11*

[26] The Fourth Amendment analysis focuses on a criminal defendant's expectation of privacy, but under Article 1, Section 11 of the Indiana Constitution, the focus is upon the actions of the police officer and whether his or her actions were reasonable under the totality of the circumstances. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). This analysis requires us to balance: "'the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id*. (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). The State has the burden of proving that police intrusion into privacy was reasonable under the totality of the circumstances. *Id*.

[27] Browder argues that the degree of suspicion that the car was stolen was low because he gave a reasonable explanation for the transferred license plate. He contends that the degree of intrusion, which is evaluated from his point of

view,[5] was high because the officer prolonged the length of the traffic stop and searched the car after ordering Browder out of his vehicle and questioning him while he stood in the bright lights of the patrol car. Finally, Browder argues that the extent of law enforcement needs was minimal because the vehicle was not reported stolen. He also argues the officer had "several less-intrusive alternatives available to him." Appellant's Br. at 36. Specifically, Browder claims the officer had all of Browder's identifying information; therefore, if subsequent investigation established that the car was stolen, the officer could have obtained a warrant. He also argues that the officer could have taken the car into custody until Browder was able to provide the paperwork establishing vehicle ownership.

[28] Officer Ball had a valid concern that the Pontiac was possibly a stolen vehicle. The license plate was not registered to the Pontiac. Also, the name listed on the registration did not establish any relation to Browder because it was registered to Browder's wife, Kayla Lanahan. Browder did not give the officer his wife's name until after Officer Ball had completed his records checks. Finally, during the records check, Officer Ball learned that Browder had possibly been involved in a prior auto theft.

[29] After the records check was complete, Officer Ball continued to ask Browder questions about the auto theft reference that the officer found during the records check, details surrounding Browder's purchase of the Pontiac, whether Browder

---

[5] *See Litchfield*, 824 N.E.2d at 360

and Lanahan were married, and Browder's circuitous route to Taco Bell. The continued questioning was minimally intrusive because it was related to the reason for the traffic stop. However, Officer Ball's decision to remove Browder from the vehicle did increase the level of intrusiveness.

[30] Finally, the extent of law enforcement needs was not as minimal as Browder claims. Officer Ball had good reason for investigating who owned the Pontiac and needed to be certain it was not stolen. Browder suggests that Officer Ball did not need to prolong the traffic stop because he could have obtained a warrant if he eventually determined that the Pontiac was actually a stolen vehicle or the officer could have taken the car into custody. However, the brief three-minute detention (before Browder offered to allow the officer to search the vehicle) was less intrusive than Browder's claimed alternatives. In fact, when the officer later considered seizing the vehicle, Browder asked the officer not to do so because his wife needed the car.

[31] Considering the totality of the circumstances in light of the factors established in *Litchfield*, we conclude that Officer Ball reasonably decided to prolong the traffic stop to continue his investigation of whether Browder was legally in possession of the Pontiac.

[32] After questioning Browder for an additional three minutes, Browder offered to allow Officer Ball to search the vehicle. As we discussed above, Officer Ball warned Browder about the possible consequences of allowing the officer to search the car and informed him that he was entitled to consult with an

attorney before allowing a search. Browder continued to consent to the search, and therefore, the warrantless search of the vehicle did not violate Article I, Section 11. *See Campos*, 885 N.E.2d at 600.

# Conclusion

[33] We conclude that Officer Ball's decision to prolong the traffic stop did not violate the Fourth Amendment or Article 1, Section 11. Also, Browder's consent to search the vehicle was voluntary. For these reasons, Browder has not established a federal or state constitutional violation, and the trial court did not abuse its discretion when it admitted into evidence the paraphernalia discovered during the warrantless vehicle search. We therefore affirm Browder's Class A misdemeanor possession of paraphernalia conviction.

[34] Affirmed.

Kirsch, J., and Pyle, J., concur.