
FILED

Dec 20 2017, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Hoosier Appeals
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Frederico A. Conn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 20, 2017<br><br>Court of Appeals Case No.<br>24A01-1703-CR-574<br><br>Appeal from the Franklin Circuit Court<br><br>The Honorable Clay M. Kellerman, Judge<br><br>Trial Court Cause No.<br>24C02-1504-F6-297 |

**Mathias, Judge.**

[1]   For purposes of privacy interests protected by Article 1, Section 11 of the Indiana Constitution, closed doors matter; high fences matter; roped-off drives matter; closed drapes matter; and in this case, a closed and locked gate matters.

[2]     Here, Conn appeals the trial court's decision to admit evidence obtained during a search at a private conservation club, arguing that the warrantless entry and search of the club violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[1]

[3]     Because we conclude that the officers' actions in this case were unreasonable under the circumstances, and therefore impermissible under Article 1, Section 11, we reverse and remand.[2]

## Facts and Procedural History

[4]     Late in the evening on April 1, 2015, Frederico Conn attended a party with friends at the Laurel Conservation Club ("the Club") during which Conn and other attendees shot firearms at a pizza box that had been converted into a target. Around midnight, Cheryl Benevengo ("Benevengo"), who lives next to the Club, heard gunshots as she drove by on her way home from work. She also noticed people outside the Club having a party. The Club has an active

---

[1] We held oral argument in this case at Hamilton Southeastern High School in Fishers, Indiana on November 13, 2017. We thank the faculty, staff, and students for their gracious hospitality. We also thank counsel for their excellent written and oral advocacy.

[2] The State argues that Conn lacks standing to challenge the search under Article 1, Section 11. However, at trial, the State only questioned whether Conn had a reasonable expectation of privacy on Club property, *see* Tr. p. 37, which goes directly to the State's federal constitutional claim. *See Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (explaining that Indiana courts have explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure under our constitution). Because the State failed to challenge Conn's standing to make the Indiana constitutional claim at trial, it may not raise the issue for the first time on appeal, and therefore, the issue is waived. *See Willis v. State*, 780 N.E.2d 423, 427 (Ind. Ct. App. 2002) ("Because the State failed to raise standing under the Indiana Constitution and because we cannot raise the issue *sua sponte,* we proceed to the merits of the state constitutional challenge.").

shooting range, and Benevengo often heard gunfire coming from that direction. However, she had never before heard gunfire so late on a weeknight. After an hour of continued noise and activity coming from the Club, Benevengo called the police. She told the dispatch officer that firearms were being shot, and that it was possible animals were being killed illegally.[3]

[5] Roughly forty-five minutes later, three officers arrived at the Club in separate marked cars: Department of Natural Resources Officer Andy Hagerty ("Officer Hagerty"), and Franklin County Sheriff's Department Deputies Adam Henson ("Deputy Henson") and Jeffrey Staat ("Deputy Staat"). By the time the officers arrived, the gunfire had ceased and the activity was winding down.

[6] A locked gate obstructed the main road from the lane leading back to the Club.[4] As the officers pulled up, a vehicle was attempting to leave the Club property, but was blocked in by the gate. The driver of the vehicle, Josh Wright ("Wright"), told the officers that he was waiting for someone to come unlock it. All three officers climbed over or otherwise maneuvered around the gate. Deputy Staat stayed with Wright, while Officer Hagerty and Deputy Henson

---

[3] Benevengo testified that she notified police that there were gunshots and "[y]elling and carrying on." Tr. p. 26. It was Deputy Adam Henson who testified that Benevengo told dispatch that "her dog had drug some animal parts over and thought maybe they were shooting some animals." *Id.* at 72.

[4] Officer Hagerty was asked if the gate was locked, and he testified, "I believe so." Tr. p. 61. Deputy Henson was asked the same question and responded, "Yes." *Id.* at 87. Deputy Staat, when asked if the gate was locked, indicated, "I ended up driving back and nobody had unlocked it. I don't believe it was locked, but it was closed." *Id.* at 111. Additionally, Josh Wright was waiting in his vehicle at the gate for someone to come unlock it. *Id.* at 75. Based on the testimony at trial, it is reasonable to infer that the gate was in fact locked.

began walking down the Club's lane where they saw a group of four individuals standing beside two vehicles next to the Club's building.

[7] As the officers made their way down the lane, they observed Conn veer away from one of the two vehicles and walk behind the Club's building. The officers found this behavior suspicious and decided to investigate what Conn was doing. Officer Hagerty then saw Conn jogging towards him from behind the building, and he asked Conn what he was doing back there. Conn told the officers that he had been urinating. After further questioning, Conn admitted that he had hidden a firearm behind the building.

[8] Conn led the officers back to where he hid the firearm under a board and some leaves. In addition to a .22 caliber handgun, the officers also discovered two change purses and a box of .22 caliber ammunition nearby. Inside the change purses the officers found a glass pipe, a pen modified into a straw, and baggies containing methamphetamine.

[9] Conn was charged with Level 6 felony possession of methamphetamine, Class A misdemeanor possession of a firearm by a domestic batterer, and Class A misdemeanor possession of paraphernalia. A two-day jury trial commenced on January 18, 2017, and during trial Conn objected to the admission of the evidence retrieved from the Club. The trial court overruled the objection, and the jury found Conn guilty. On February 14, 2017, Conn was sentenced to two-and-one-half years to be served at the Franklin County Security Center. Conn now appeals.

# I. Standard of Review

When reviewing a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Cartwright v. State*, 26 N.E.3d 663, 667 (Ind. Ct. App. 2015), *trans. denied.* However, the constitutionality of a search or seizure is a pure question of law that we review *de novo. Browder v. State*, 77 N.E.3d 1209, 1213 (Ind. Ct. App. 2017), *trans. denied.*

# II. Article 1, Section 11 of the Indiana Constitution

Conn claims that the officers' actions here violated his rights under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Because we conclude that the officers' actions here were unreasonable under Article 1, Section 11, we do not address Conn's claims under the Fourth Amendment.

Under Article 1, Section 11, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). Our supreme court has explained that the reasonableness of a search or seizure necessitates a balancing of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361. In evaluating these factors to determine whether

police behavior in a given case was reasonable under Section 11, we consider each case on its own facts, and we construe the constitutional provision liberally so as to guarantee the rights of Hoosiers against unreasonable searches and seizures. *Mundy v. State*, 21 N.E.3d 114, 118 (Ind. Ct. App. 2014). Thus, it is the State's burden to prove that the police intrusion was reasonable under the totality of the circumstances. *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013).

*A. Degree of Concern, Suspicion, or Knowledge*

[13] Here, the degree of concern, suspicion, or knowledge the officers had that a violation of law had occurred was negligible. The officers arrived at the Club to investigate "ongoing shooting" and that "maybe [those at the Club] were shooting some animals." Tr. p. 72. However, once the officers arrived, the shooting had stopped. There was no evidence of poaching or any animals being killed. And Ms. Benevengo testified that it "looked like they were [] wrapping it up by the time [the officers] got there." *Id.* at 27.

[14] The State argues that the degree of concern was high because the officers received a tip that led them to believe criminal activity was occurring at the club. However, there is no evidence supporting this conclusion. During trial, each of the three officers conceded that it is not against the law to shoot a gun at a conservation club, and none of the officers saw any evidence of poaching. Further, there were no allegations of other criminal activity that Conn and those at the Club may have been involved in. Simply put, at the time the officers arrived at the Club, there was little, if any, evidence that Conn had violated any laws. *See Trotter v. State*, 933 N.E.2d 572, 580 (Ind. Ct. App. 2010)

(finding that the officers' degree of concern, suspicion, or knowledge that a violation had occurred was "non-existent" where the officers arrived on scene to investigate a complaint of gunshots fired in a backyard). Under the facts and circumstances before us in this case, the degree of the officers' suspicion here was minimal.

## B. Degree of Intrusion

[15] The degree of intrusion is evaluated from Conn's point of view. *See Litchfield*, 824 N.E.2d at 360. This factor is the most concerning aspect about the officers' conduct in this appeal. When the three officers arrived at the Club property, they were barred from entering the Club by a locked gate. Each officer then either jumped over or maneuvered around the gate. Moreover, during this time, Wright was in his vehicle attempting to exit the Club and waiting for someone to come unlock the gate so he could leave. Under these circumstances, the officers could have either: (1) waited for the gate to be unlocked and stopped persons on their way out; or (2) obtained a warrant. There was no reason to ignore a locked gate.

[16] The State contends that the degree of intrusion was low; however, its assessment fails to acknowledge that the officers encountered a locked gate. Our courts have consistently held that when Indiana citizens put mechanisms in place to keep others out, ignoring these obstructions constitutes highly intrusive conduct by law enforcement. *See Carpenter v. State*, 18 N.E.3d 998, 1002 (Ind. 2014) (explaining that the degree of intrusion was high where officers jumped over a locked gate and fence to reach an open door); *Mundy*, 21 N.E.3d at 119

(finding the degree of intrusion was high when officers took down a cable that was blocking a drive); *Trotter*, 933 N.E.2d at 581 (concluding that the degree of intrusion was immense where the officers entered a pole barn through an unlocked door); *Divello v. State*, 782 N.E.2d 433, 438 (Ind. Ct. App. 2003) (holding that walking through a privacy gate is highly intrusive because the area cannot be regarded as one where uninvited visitors would normally be expected to travel). Under the facts and circumstances before us, the degree of intrusion on the ordinary activities of the partygoers and Conn was substantial.

### C. The Extent of Law Enforcement Needs

[17] Finally, we consider the extent of law enforcement needs. There was absolutely no evidence of emergency or outside threat to the public, and the officers had several other ways that they could have addressed Ms. Benevengo's concerns. *See Masterson v. State*, 843 N.E.2d 1001, 1007 (Ind. Ct. App. 2006) (explaining that the third *Litchfield* factor "requires consideration of the nature and immediacy of the governmental concern."), *trans. denied*. The officers could have asked Wright about the noise and activities at the Club when they encountered him at the gate. Or, the officers could have waited for someone to come let Wright out and then asked for permission to enter the property.

[18] Although the officers were responding to reported gunfire late on a weeknight, we find it significant that the gunfire was ongoing at a Club with a shooting range, where gunfire is not uncommon. And Conn was firing at a pizza box converted into a target—this is not a situation where an individual is waving a gun around in public in a densely populated area. *See Grayson v. State*, 52

N.E.3d 24 (Ind. Ct. App. 2016), *trans. denied.* Additionally, there was no evidence of exigent circumstances that would have justified the officers' unlawful intrusion. *Cf. Holder v. State*, 847 N.E.2d 930, 940–41 (Ind. 2006) (holding that warrantless entry into a home was justified where large amounts of ether fumes were emanating from the home and pervading the neighborhood); *VanWinkle v. State*, 764 N.E.2d 258, 266–67 (Ind. Ct. App. 2002) (holding that a warrantless entry into a residence was appropriate where officers had reasonable grounds to believe immediate aid was needed inside), *trans. denied.*

[19] The State argues that the extent of law enforcement needs was high because of reports of "armed individuals shooting randomly at areas and at times not common for the area." Appellee's Br. at 23. But the shooting had stopped by the time all three officers arrived at the Club. And there is no evidence that any of the partygoers on the Club property that evening were, or had been, "shooting randomly." Instead, the evidence presented at trial indicates that Conn and those he was with were firing at a pizza box. The officers did not need to jump over a locked gate in order to investigate what amounted to a noise complaint. *See Carpenter*, 18 N.E.3d at 1003 (finding that law enforcement needs were low where there was no evidence of anyone in danger of harm or in need of assistance and where the police had other means of addressing the situation).

*D. Balancing the Totality of the Circumstances*

[20] Taken together, these factors lead us to conclude that the State has not met its burden of establishing that the officers' actions in this case were reasonable. The degree of concern, suspicion, or knowledge that a criminal violation had occurred or was occurring was minimal. The officers' decision to maneuver over or around a locked gate to access private Club property represents a substantial level of intrusion. And finally, the extent of law enforcement needs was low. Accordingly, we hold that the officers' conduct violated Article 1, Section 11. Because the evidence was obtained as a result of an illegal search and seizure, it amounts to the fruit of the poisonous tree; and thus, the trial court abused its discretion when it admitted the evidence at trial. *Gyamfi v. State*, 15 N.E.3d 1131, 1138 (Ind. Ct. App. 2014).

# Conclusion

[21] Under the facts and circumstances of the present case, we conclude that the conduct of the police officers was not reasonable. The officers' entry onto Club property violated Article 1, Section 11 of the Indiana Constitution and therefore, the evidence obtained after the illegal search should not have been admitted at trial. For all of these reasons, we reverse the conviction and remand for proceedings consistent with this opinion.

[22] Reversed and remanded.

Crone, J., concurs.

Vaidik, C.J., dissents with opinion.

ATTORNEY FOR APPELLANT

Leanna Weissmann
Hoosier Appeals
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Frederico A. Conn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 20, 2017

Court of Appeals Case No.
24A01-1703-CR-574

Appeal from the Franklin Circuit
Court

The Honorable Clay M.
Kellerman, Judge

Trial Court Cause No.
24C02-1504-F6-297

**Vaidik, Chief Judge, dissenting.**

[23] I respectfully dissent. Conn did not have standing to challenge the evidence under Article 1, Section 11 of the Indiana Constitution, and I disagree with the majority's conclusion that the State failed to raise this issue in the trial court.

[24] The test for standing under Article 1, Section 11 was established by the Indiana Supreme Court in *Peterson v. State*, 674 N.E.2d 528 (Ind. 1996). In that case, a defendant charged with two murders challenged the search of his mother's apartment. The defendant had previously stayed in a bedroom in the apartment (his mother kicked him out the day before the search), and in the closet of that bedroom officers found a sawed-off shotgun. The shotgun was later found to have fired a spent casing recovered at the murder scene. The defendant argued that the admission of the gun into evidence violated the Fourth Amendment and Article 1, Section 11.

[25] Regarding the Fourth Amendment, the Court explained that a defendant challenging a search has the burden to demonstrate that he had a legitimate expectation of privacy "in the premises searched." *Id*. at 532. The defendant noted that "he had been living in and had property in the searched room," but the Court concluded, "While the defendant **had** previously lived in the room which was searched, at the time of the search, the defendant had no control or ownership in the premises searched." *Id*. at 533. As such, the defendant had "no reasonable expectation of privacy" and therefore lacked standing under the Fourth Amendment. *Id*. at 534.[5]

---

[5] I acknowledge that the U.S. Supreme Court has gone away from the concept of "standing" in the Fourth Amendment context. *See Allen v. State*, 893 N.E.2d 1092, 1096 (Ind. Ct. App. 2008) (discussing U.S. Supreme Court's conclusion that analysis of defendant's alleged privacy interest is better framed as issue of substantive Fourth Amendment law than issue of "standing"), *reh'g denied, trans. denied*. However, the Indiana Supreme Court has continued to use the term for ease of reference in cases that involve both the

[26] The Court then addressed Article 1, Section 11. After reviewing the historical treatment of the provision, the Court held that a defendant can establish standing by demonstrating "ownership, control, possession, or interest" in **either** the premises searched (as under the Fourth Amendment) **or** "the property seized." *Id*. at 534. However, the Court's subsequent discussion of the case before it made clear that standing based on "the property seized" only allows for challenges to the actual seizure of the property, not to any entry that made the seizure possible. Specifically, the Court concluded that the defendant's admitted possessory interest in the gun gave him standing to challenge its seizure, but, "[a]s noted in our prior discussion [regarding the Fourth Amendment], the defendant does **not** have standing to challenge the entry into his former bedroom and closet. He has shown no ownership, control, possession or interest in the premises searched." *Id*. at 534-35 (emphasis added). Ultimately, although the defendant had standing to challenge the seizure of the gun, the Court affirmed the trial court's rejection of that challenge because the gun was in open view in the closet and was illegal (at the time, possession of a sawed-off shotgun was prohibited in Indiana). *Id*. at 535.

[27] So what good does "property seized" standing do for a criminal defendant if it does not permit challenges to the initial entry into the premises searched? The

Fourth Amendment and Article 1, Section 11, *see, e.g., Campos v. State*, 885 N.E.2d 590 (Ind. 2008), and I do the same here.

final paragraph of the *Peterson* Court's standing discussion illustrates one possibility. The Court noted that while one officer had testified that the gun was in open view in the closet, another had testified that it was found in a duffel bag. Though the Court deferred to the trial court's finding that the gun was in open view, the fact that the Court discussed the issue implies that if the officers **had** found the gun in a duffel bag claimed by the defendant, the defendant may have been able to make out an Article 1, Section 11 violation. *See also State v. Friedel*, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (holding that defendant had standing to challenge search of her purse even if she did not have standing to challenge search of van in which purse was found).

[28] Here, Conn did not establish either "premises searched" standing or "property seized" standing. Regarding the premises, he did not present any evidence that he was an "owner" of the club, that he was a member of the club, that he was an invited guest, or that he had any sort of permission to be on the club's property. For all we know, Conn was a trespasser on the night of his arrest. Therefore, he had no standing to challenge the officers' initial entry onto club property. *See Peterson*, 674 N.E.2d at 534.[6]

[29] And to the extent Conn asserts "property seized" standing, that claim fails as well. He has never claimed or admitted any sort of interest in the methamphetamine or the paraphernalia. In fact, there is evidence that he

---

[6] For the same reason, I would also affirm the trial court's rejection of Conn's claim under the Fourth Amendment. *See Peterson*, 674 N.E.2d at 532-33.

specifically denied any knowledge of those items. *See* Tr. p. 108. As for the gun, while Conn admitted on the scene and in a post-arrest interview that he had possessed the gun momentarily for purposes of hiding it behind the building, there is no evidence that he had any possessory interest in the gun after he did so. The prosecutor told the judge outside the presence of the jury that Officer Hagerty was prepared to testify that the gun belonged to a woman who was at the club with Conn and that Conn said he was hiding it for her. Tr. pp. 38-43. Conn did not present any evidence to contradict this version of events, so he cannot claim that he had any continuing interest in the gun at the time the officers recovered it.[7]

[30] The majority does not address whether Conn had standing to make an Article 1, Section 11 claim, concluding instead that the State failed to raise the issue in the trial court and therefore waived it for purposes of appeal. I disagree. When Conn first objected to the evidence, the prosecutor pointed out that "there's been no evidence that the Defendant has any kind of reasonable expectation of privacy on private property whether it's his or had any right to be there." Tr. p. 37. The majority acknowledges this argument but holds that it went only to

---

[7] Of course, Conn's failure to claim a possessory interest in the items, either at trial or on appeal, may have something to do with the fact that he was charged with illegally possessing those exact items. *See, e.g., Person v. State*, 764 N.E.2d 743, 749 (Ind. Ct. App. 2002) (explaining that defendant challenging search of house and seizure of gun, in case charging unlawful possession of a firearm by a serious violent felony, denied ownership of gun "for obvious reasons"), *trans. denied*; *Mays v. State*, 719 N.E.2d 1263, 1267 (Ind. Ct. App. 1999) (explaining that defendant challenging search of apartment building atrium and seizure of cocaine, in case charging possession of cocaine, did not admit possessory interest in cocaine "for obvious reasons"), *trans. denied*.

Conn's Fourth Amendment claim. Slip op. at 2 n.2 (citing *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005)).

[31] But to the extent that the prosecutor's response was limited to Conn's lack of an interest in the premises, it was commensurate with Conn's own limited objection, which asserted only that the officers acted unconstitutionally by "entering onto private property." Tr. p. 36. Conn's objection made no mention of the officers' actions after they passed the locked gate, such as moving the boards and leaves that were covering the items or opening the coin purses. Where a defendant challenges the entry into the premises searched, our Supreme Court's decision in *Peterson* teaches that the standing analysis under Article 1, Section 11 is no different than the analysis under the Fourth Amendment. *See* 674 N.E.2d at 534 (indicating that conclusion that defendant had "no reasonable expectation of privacy," and therefore no standing, under Fourth Amendment was dispositive of "premises searched" standing under Article 1, Section 11); *see also Allen v. State*, 893 N.E.2d 1092 (Ind. Ct. App. 2008) (noting that there is not "much of a difference, if any, in result" regarding standing under Fourth Amendment and Article 1, Section 11 "when a defendant's interest in seized property is not at issue"), *reh'g denied, trans. denied*. In short, because Conn's objection focused on the officers' initial entry onto club property, the prosecutor's statement that Conn had failed to establish that he had "any kind of reasonable expectation of privacy on private property," that "it's his," or that he "had any right to be there" served to challenge Conn's standing under both the Fourth Amendment and Article 1, Section 11.

Therefore, the State did not waive the issue and has properly raised it on appeal.

[32] To be clear, I acknowledge that the officers' conduct in this case was constitutionally suspect. I simply conclude that Conn has not shown that **he** is entitled to challenge that conduct. As such, I would hold that the trial court properly admitted the challenged evidence and would affirm Conn's convictions.