## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 25 2019, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

K. Aaron Heifner
Heifner Law, Inc.
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shian S. Mendenhall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 25, 2019

Court of Appeals Case No.
18A-CR-1613

Appeal from the
Madison Circuit Court

The Honorable
Thomas Newman, Jr., Judge

Trial Court Cause No.
48C03-1711-F3-2909

**Kirsch, Judge.**

[1] Shian S. Mendenhall ("Mendenhall") was convicted after a jury trial of battery by means of a deadly weapon,[1] a Level 5 felony, and criminal confinement[2] as a Level 3 felony and was sentenced to concurrent terms of six years for her battery conviction and sixteen years for her criminal confinement conviction. On appeal, Mendenhall raises the following restated issues:

> I. Whether the trial court abused its discretion when it admitted Mendenhall's red purse into evidence; and

> II. Whether the trial court abused its discretion in sentencing Mendenhall by declining to find Mendenhall's mental health to be a mitigating factor.

[2] We affirm.

## Facts and Procedural History

[3] On November 22, 2017, Adam Richardson ("Adam") returned home from work and discovered that Mendenhall, who had been a foster child cared for by Richardson's family for several months in 2012-2013, had entered his home without permission. *Tr. Vol. I* at 212-13; *Tr. Vol. II* at 5-6. Although Mendenhall was not invited, Adam and his wife, Mindi Richardson ("Mindi") (together, "the Richardsons") welcomed her into the home. *Tr. Vol. I* at 214. Mendenhall told the Richardsons that she was looking for help finding a job,

---

[1] *See* Ind. Code § 35-42-2-1(c)(1), (g)(2).

[2] *See* Ind. Code § 35-42-3-3(a), (b)(2)(A).

wanted a place to stay, and wanted to borrow a car. *Id.* The Richardsons allowed Mendenhall to spend the night with them and invited her to join them for Thanksgiving the next day. *Id.* at 215. At the time Mendenhall entered the Richardsons' house, she had a red purse with her. *Id.* at 214; *Tr. Vol. II* at 8.

[4] The next day, the Richardsons prepared food in the kitchen before going out for the Thanksgiving meal. M.R., the Richardsons' daughter, observed Mendenhall go into the kitchen, hunch over her bag, and put something inside the bag. *Tr. Vol. II* at 32. The Richardsons and Mendenhall went to Mindi's parents' home to eat the Thanksgiving meal, and Mendenhall took her red purse with her. *Id.* at 10. After eating, the Richardsons drove Mendenhall to her grandmother's home because there was no room for her to stay at their home. *Tr. Vol. I* at 215, 217; *Tr. Vol. II* at 10.

[5] When the Richardsons and Mendenhall arrived at the home where Mendenhall's grandmother, Judy Norris ("Judy"), lived, Mendenhall insisted that only Mindi accompany her inside the house and wanted Mindi to explain to Judy why Mendenhall did not spend Thanksgiving with Judy. *Tr. Vol. I* at 218, 220; *Tr. Vol. II* at 15. Although Mindi agreed to go inside the house alone with Mendenhall, Adam waited outside the door for her. *Tr. Vol. I* at 220; *Tr. Vol. II* at 16. Mendenhall had her red purse with her when she entered the home with Mindi, and after they were inside the house, Mendenhall shut and locked the door behind them. *Tr. Vol. II* at 15-16. Mendenhall persuaded Mindi to enter the main area of the house first, and "[a]s soon as [Mindi] turned [her] back the next thing [she] knew [she] felt a blade sharp [sic] pulling back at

[her] throat." *Tr. Vol. I* at 222. Mendenhall said nothing as she put the knife to Mindi's throat, and Mindi grabbed the knife with both hands and dropped to her knees on the floor. *Id.* at 222. Mindi was able to gain control of the knife from Mendenhall while she yelled for Adam, who kicked open the locked door, allowing Mindi to escape. *Tr. Vol. I* at 223-24; *Tr. Vol. II* at 16-18. Mindi, Adam, and M.R. ran back to their truck, locked the doors, and called the police. *Tr. Vol. I* at 225; *Tr. Vol. II* at 19. Once in the truck, Mindi attempted to stop the blood coming from a cut in her throat and cuts on her hands. *Tr. Vol. I* at 225. Both Adam and Mindi recognized the knife that Mindi had wrestled away from Mendenhall as one of their own kitchen knives. *Id.* at 231; *Tr. Vol. II* at 22.

[6] Mindi was taken to the hospital for treatment of the cuts on her throat and hands. *Tr. Vol. I* at 229; *Tr. Vol. II* at 39. Deputy Tyler McKean ("Deputy McKean") of the Madison County Sheriff's Department spoke with Mindi at the hospital and learned that Mendenhall had a red purse, which may have been used to transport the knife, that was still at the home where Judy lived. *Tr. Vol. II* at 67. Deputy McKean went back to the residence and spoke with Mendenhall's uncle, Anthony Norris ("Anthony"), who was the owner of the home, and Anthony signed a consent to search form. *Id.*; *State's Ex.* 28. Anthony led Deputy McKean to the back bedroom where the purse was located, and Deputy McKean collected it and placed it into evidence. *Tr. Vol. II* at 67, 72; *State's Ex.* 29.

[7]     On November 27, 2017, the State charged Mendenhall with one count of battery by means of a deadly weapon, a Level 5 felony, and one count of criminal confinement, a Level 3 felony. *Appellant's App. Vol. 2* at 16-19. On May 15, 2018, a hearing was conducted to determine whether Mendenhall was competent to stand trial. At the hearing, Dr. Ned Masbaum ("Dr. Masbaum") testified that he diagnosed Mendenhall with "Major Depressive Disorder, Depressive Disorder, Conduct Disorder, Suicidal Idealization and Behavior" and gave a second diagnosis of "probable Borderline Personality Disorder." *Tr. Vol. I* at 18. He further testified that she was competent to understand the proceedings and to assist in her defense. *Id.* at 18-19. Dr. Frank Krause ("Dr. Krause") also testified that his "recommendation was that [Mendenhall] was competent to stand trial," and noted that Mendenhall did not appear to be acting under any type of delusion or psychosis and was not taking any medication. *Id.* at 24-25.

[8]     On May 20, 2018, the night before the jury trial was to begin, Mendenhall filed a motion to suppress the admission of her red purse into evidence at trial. *Appellant's App. Vol. 2* at 31-32. In her written motion, Mendenhall claimed that Anthony did not have the authority to allow the search of the residence and seizure of her purse. *Id.* On May 21, 2018, before the trial commenced, the trial court allowed argument on Mendenhall's motion, and at that time, Mendenhall argued that there was nothing incriminating inside the purse, but that "the bag itself is the incriminating thing" because she was seen with it in her possession on the day of the crimes. *Tr. Vol. I* at 32. Mendenhall stated that

she did not object to witnesses testifying about her possession of the purse but that she thought that "[the State] should be precluded from admitting the purse . . . as an exhibit." *Id*. at 33. The State argued that Anthony, the homeowner, had signed a consent to search form, that they separately obtained a search warrant for the contents of the purse, which revealed nothing of relevance, and that the bag was only being admitted as a physical exhibit. *Id*. at 34. The trial court denied the motion to suppress, and the purse was admitted at trial. *Id*. at 35; *Tr. Vol. II* at 33.

[9] At the conclusion of the trial, the jury found Mendenhall guilty as charged. *Tr. Vol. II* at 243. At sentencing, Mendenhall requested that the trial court take judicial notice of the competency hearing diagnosis by Dr. Masbaum, who had concluded that Mendenhall might have borderline personality disorder, as a mitigating factor. *Tr. Vol. III* at 2. The trial court found as aggravating circumstances Mendenhall's criminal history, the fact that she violated probation when she committed the present crimes, the nature of the crime, Mendenhall's commission of prior violent acts, her violation of a position of trust, and her unremorseful demeanor. *Id*. at 14. The trial court found no mitigating circumstances and sentenced Mendenhall to an aggregate sentence of sixteen years in the Department of Correction. *Id*. Mendenhall now appeals.

# Discussion and Decision

## I.     Admission of Evidence

[10]    Mendenhall argues that the trial court abused its discretion when it admitted her red purse into evidence at trial.  Mendenhall first challenged the admission of evidence through a motion to suppress but now appeals following a completed trial.  Therefore, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.  *Sugg v. State*, 991 N.E.2d 601, 606 (Ind. Ct. App. 2013), *trans. denied*.  The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion.  *Id*.  An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.  *Id.* at 606-07.  Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error.  *Id*. at 607.  Error is harmless if it does not affect the substantial rights of the defendant.  *Id*.

[11]    The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures.  *Veerkamp v. State*, 7 N.E.3d 390, 394 (Ind. Ct. App. 2014), *trans. denied*.  Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure.  *Sugg*, 991 N.E.2d at 607.  When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search.  *Holloway v. State*, 69 N.E.3d 924, 930 (Ind. Ct. App. 2017), *trans. denied*.  A

warrantless search based on lawful consent is consistent with both the Indiana and United States Constitutions. *Browder v. State*, 77 N.E.3d 1209, 1216 (Ind. Ct. App. 2017), *trans. denied*. "'A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law.'" *Id*. at 1217 (quoting *Navarro v. State*, 855 N.E.2d 671, 675 (Ind. Ct. App. 2006)). Whether consent to search was voluntary is a question of fact determined from the totality of the circumstances. *Id*.

[12] Here, although Mendenhall appears to argue that the admission of her red purse was an abuse of discretion because the search violated the Fourth Amendment, she does not provide this court with a proper basis to determine her contention. The only Fourth Amendment law she cites is in reference to inventory searches, which did not occur in the present case. *Appellant's Br*. at 12-13. At trial, Mendenhall objected to the admission of the red purse and stated she was objecting based on the same reasoning as her motion to suppress, which was that the search exceeded the scope of the consent. *Tr. Vol. II* at 33; *Appellant's App. Vol. 2* at 31-32. Here, Mendenhall makes no argument that the consent was not valid nor cites any law regarding consent searches. Therefore, Mendenhall has waived this issue for failure to make a cogent argument or to cite to legal authority as required by Indiana Appellate Rule 46(A)(8). *Burnell v. State*, 110 N.E.3d 1167, 1171 (Ind. Ct. App. 2018).

[13] Waiver notwithstanding, the purse was properly admitted because it was obtained through a valid consent search. During his investigation, Deputy McKean learned that Mendenhall had a red purse in her possession on the day

that the crimes occurred and that the red purse may have been used by Mendenhall to transport a kitchen knife belonging to the Richardsons' from their house. *Tr. Vol. II* at 67. Deputy McKean returned to the house where the crime occurred and spoke with Anthony, who was the owner of the house. *Id*. Anthony consented to a search of the house and took Deputy McKean to a back bedroom where Mendenhall's red purse was located. *Id*. at 67, 72. The record showed that not only did Anthony sign a consent to search form, he accompanied Deputy McKean to the bedroom where the purse was located, did not oppose the search, and actively assisted in the search. *Id*. at 67, 72; *State's Ex.* 28. We, therefore, conclude that Anthony's consent was voluntary, and the purse was discovered through a valid consent search. *Browder*, 77 N.E.3d at 1216-17. The seizure of the red purse did not violate the Fourth Amendment, and the trial court did not abuse its discretion in admitting it into evidence at trial.

## II. Sentencing

Mendenhall argues that the trial court abused its discretion when it sentenced her because it declined to find her mental health to be a mitigating circumstance. Sentencing decisions are within the sound discretion of the trial court. *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014) (citing *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218), *trans. denied.* However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains

reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. *Anglemyer*, 868 N.E.2d at 490-91. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Weedman*, 21 N.E.3d at 893. The weight given to particular aggravators or mitigators is not subject to appellate review. *Id.*

[15] The determination of mitigating circumstances is within the discretion of the trial court. *Townsend v. State*, 45 N.E.3d 821, 830 (Ind. Ct. App. 2015), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that a trial court abused its discretion by failing to find a mitigating factor requires an appellant to establish that the mitigating evidence is significant and clearly supported by the record. *Id.* at 830-31. "Mental illness is not necessarily a significant mitigating factor; 'rather, [it] is a mitigating factor to be used in certain circumstances, such as when the evidence demonstrates longstanding mental health issues or when the jury finds that a defendant is mentally ill.'" *Id.* at 831 (quoting *Ousley v. State,* 807 N.E.2d 758, 762 (Ind. Ct. App. 2004).

[16] Mendenhall contends that it was an abuse of discretion for the trial court to decline to find her mental health issues to be a mitigating circumstance. She

asserts that evidence of her mental health issues was clearly supported by the record and that the evidence showed that she suffered from several disorders. She further claims that her interview with the police and her recounting of the events of the crimes to the police demonstrated the extent of her mental health issues. Based on this evidence, Mendenhall maintains that the trial court ignored a clear mitigating circumstance and abused its discretion when it sentenced her.

[17] Our Supreme Court has held there is "the need for a high level of discernment when assessing a claim that mental illness warrants mitigating weight." *Covington v. State,* 842 N.E.2d 345, 349 (Ind. 2006). The Supreme Court identified several factors to consider in weighing the mitigating force of a mental health issue, including "the extent of the inability to control behavior, the overall limit on function, the duration of the illness, and the nexus between the illness and the crime." *Id.* Here, Mendenhall presented no evidence concerning the extent of her inability to control her behavior, the overall limit on her ability to function, or the nexus between her mental health and her offenses. Given the lack of evidence on these factors, Mendenhall has not shown that her mental health was significant or clearly supported by the record. The trial court did not abuse its discretion when it did not recognize Mendenhall's mental health as a mitigating circumstance.

[18] Even if the trial court had abused its discretion by declining to find Mendenhall's mental health to be a mitigating circumstance, any error was harmless. When the trial court abuses its discretion in sentencing, we will

remand if we cannot say with confidence that the trial court would have imposed the same sentence. *Webb v. State*, 941 N.E.2d 1082, 1090 (Ind. Ct. App. 2011), *trans. denied*. Here, the trial court found numerous aggravating circumstances, including Mendenhall's criminal history, the fact that she violated probation when she committed the present crimes, the nature of the crimes she committed, her commission of prior violent acts, her violation of a position of trust, and her unremorseful demeanor. *Tr. Vol. III* at 14. The trial court sentenced Mendenhall to six years for her Level 5 felony battery by means of a deadly weapon conviction and sixteen years for her Level 3 felony criminal confinement conviction and ordered the sentences to be served concurrently for an aggregate sentence of sixteen years executed. Because of the presence of significant aggravating factors, we conclude that the trial court would have imposed the same sentence even if it had found Mendenhall's mental health to be a mitigating factor. *See Scott v. State*, 840 N.E.2d 376, 384 (Ind. Ct. App. 2006) (holding that while the trial court erred in failing to find the defendant's mental illness as a mitigating factor, that error was harmless in light of multiple valid aggravating factors), *trans. denied*.[3]

[19]    Affirmed.

---

[3] To the extent Mendenhall cites to Indiana Appellate Rule 7(B), any appropriateness challenge is waived for failure to make a cogent argument. Mendenhall fails to make any argument based on the appropriateness of her sentence under Appellate Rule 7(B) and does not conduct an analysis of the nature of the crime or the character of the offender as required by the rule. *Appellant's Br.* at 13-18. *See* Ind. Appellate Rule 7(B). Because she has failed to make a cogent argument, Mendenhall has waived this issue on appeal. *Burnell v. State*, 110 N.E.3d 1167, 1171 (Ind. Ct. App. 2018).

Riley, J., and Robb, J., concur.